BROWNE GEORGE ROSS LLP
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Matthew L. Venezia (State Bar No. 313812)
  mvenezia@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff
ATARI INTERACTIVE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ATARI INTERACTIVE, INC., | Case No. 2:19-CV-10806-DSF-MAA |
| Plaintiff, | The Hon. Dale S. Fischer |
| vs. | **PLAINTIFF'S NOTICE OF APPLICATION AND APPLICATION FOR DEFAULT JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| RAGEON, INC., | |
| Defendant. | |
| | *[Filed Concurrently with Declaration of Keith J. Wesley in Support of Plaintiff's Application for Default Judgment; and [Proposed] Default Judgment and Permanent Injunction]* |
| | Judge:  Hon. Dale S. Fischer<br>Date:   April 6, 2020<br>Time:   1:30 p.m.<br>Crtrm.:  7D |
| | Trial Date:  None Set |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 6, 2020, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 7D of the United States District Court for the Central District of California, Western Division, located at 350 West 1st Street, Los Angeles, California 90012, plaintiff Atari Interactive, Inc. ("Plaintiff"), will and hereby does apply to the Court for entry of a default judgment against defendant RageOn, Inc. ("Defendant").

Plaintiff brings this application pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Rules 55-1 through 55-3, and following entry of the default of Defendants on January 30, 2020.  Dkt. No. 13.  Plaintiff requests: (1) an injunction barring future copyright and trademark infringement, (2) an award of statutory damages under the Copyright Act and Lanham Act, and (3) an award of attorneys' fees pursuant to the schedule set forth in Local Rule 55-3.

This application is based on this notice, the accompanying memorandum of points and authorities, the Declaration of Keith J. Wesley and the exhibits thereto, the pleadings, documents and records on file herein, and such further oral or documentary evidence as may be presented at any hearing on the application.

DATED:  February 24, 2020

BROWNE GEORGE ROSS LLP
    Keith J. Wesley
    Matthew L. Venezia


By:    */s/ Keith J. Wesley*
        Keith J. Wesley
Attorneys for Plaintiff
Atari Interactive, Inc.

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES..................................................1

I.     INTRODUCTION ..................................................................................1

II.    STATEMENT OF FACTS.......................................................................3

    A.    Atari Owns the Intellectual Property that RageOn Infringed. .................3

    B.    RageOn Manufactured, Marketed, and Sold Myriad Counterfeit Atari Products.................................................................................4

    C.    RageOn Continued to Infringe After Being Notified of the Lawsuit.........................................................................................4

    D.    RageOn is Actually Aware of this Lawsuit. ..........................................4

    E.    RageOn's Infringement Extends Far Beyond Atari.................................5

III.   ARGUMENT .......................................................................................6

    A.    The Court Should Enter a Default Judgment..........................................6

        1.    Legal Effect of the Entry of Default................................................6

        2.    The Court Has Subject Matter Jurisdiction and Personal Jurisdiction Over RageOn ..........................................................7

        3.    Atari has Satisfied the Procedural Requirements for Obtaining a Default Judgment Against the Defendants .................7

        4.    The Ninth Circuit's *Eitel* Factors Strongly Favor the Court Granting this Application ............................................................7

            a.    Atari will Suffer Prejudice if Default Judgment is not Entered....................................................................8

            b.    The Complaint is Sufficient and its Claims are Supported by Substantial Evidence......................................8

               (i)    RageOn is Liable to Atari for Trademark Infringement and Counterfeiting................................9

               (ii)   RageOn is Liable to Atari for Willful Copyright Infringement ...........................................10

## <u>TABLE OF CONTENTS</u>
### (Continued)

Page

c.   Plaintiff's Requested Monetary Award is Reasonable in Light of Defendants' Wrongful Conduct ........................ 11

d.   There is no Reasonable Possibility of a Dispute as to Any Material Facts ................................................. 12

e.   RageOn's Default was not Due to Excusable Neglect ........ 13

f.   Entry of Default Judgment is Consistent with Public Policy Considerations ........................................... 13

B.   The Court Should Issue an Injunction and Award Monetary Relief ....... 13

1.   Plaintiff Should be Granted Injunctive Relief. ............... 14

2.   Plaintiff Should Be Awarded Statutory Damages ........................ 14

3.   Plaintiff Should Be Awarded Attorney's Fees ............................ 15

IV.   CONCLUSION ..................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>FEDERAL CASES</u>

*Abercrombie & Fitch Trading Co. v. 2cheapbuy.com*,
  No. 14-60250-cv, 2014 WL 11706447 (S.D. Fla. June 4, 2014) ........................ 15

*Century 21 Real Estate Corp. v. Sandlin*,
  846 F.2d 1175 (9th Cir. 1988) ...................................................................... 14

*Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir. 2001) .................................................. 10

*Craigslist, Inc. v. Naturemarket, Inc.*,
  694 F. Supp. 2d 1039 (N.D. Cal. 2010) ........................................................ 12

*Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*,
  722 F.2d 1319 (7th Cir. 1983) ........................................................................ 6

*Eitel v. McCool*,
  782 F.2d 1470 (9th Cir. 1986) ...................................... 7, 8, 9, 11, 12, 13

*Erickson Productions, Inc. v. Kast*,
  921 F.3d 822 (9th Cir. 2019) ........................................................................ 10

*Feingold v. RageOn, Inc.*,
  No. 1:18-cv-02055 (S.D.N.Y.) (filed Mar. 7, 2018) ...................................... 5

*Feist v. Rural Telephone Serv. Co., Inc.*,
  499 U.S. 340 (1991) ........................................................................................ 10

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994) ........................................................................................ 15

*Geddes v. United Financial Group*,
  559 F.2d 557 (9th Cir. 1977) ..................................................................... 6, 12

*Hsaio & Montano, Inc. v. Rack in the Cases Ltd.*,
  No. 10-cv-3411-DSF, 2011 WL 13214024
  (C.D. Cal. Jan. 20, 2011) (Fischer, J.) .................................................... 6, 11

*Microsoft Corp. v. Buy More, Inc.*,
  136 F. Supp. 3d 1148 (C.D. Cal. 2015) ......................................................... 9

### TABLE OF AUTHORITIES
#### (Continued)

**Page(s)**

*Microsoft Corp. v. Nop*,
  549 F. Supp. 2d 1233 (E.D. Cal. 2008) ...................................................... 11

*PepsiCo. v. Cal. Sec. Cans*,
  238 F. Supp. 2d 1172 (C.D. Cal. 2002) ........................................ 8, 12, 13

*PepsiCo. v. Triunfo-Mex, Inc.*,
  189 F.R.D. 431 (C.D. Cal. 1999) .................................................................. 8

*Philip Morris USA Inc. v. Castworld Productions, Inc.*,
  219 F.R.D. 484 (C.D. Cal. 2003) ........................................................... 8, 12

*Pokemon Co. Int'l, Inc. v. RageOn, Inc.*,
  No. 2:15-cv-01265 (W.D. Wash.) (filed Aug. 11, 2015) ...................... 5

*Rolls-Royce PLC v. Rolls-Royce USA, Inc.*,
  688 F. Supp. 2d 150 (E.D.N.Y. 2010) ..................................................... 15

*Shanghai Automation Instrument Co., Ltd. v. Kuei*,
  194 F. Supp. 2d 995 (N.D. Cal. 2001) ..................................................... 13

*Taieb v. Rageon, Inc.*,
  No. 2:2018cv04960 (C.D. Cal.) (filed June 4, 2018) .............................. 5

*TeleVideo Sys., Inc. v. Heidenthal*,
  826 F.2d 915 (9th Cir. 1987) ........................................................................ 6

*To v. Nguyen*,
  No. SACV-0700989-JVS, 2008 WL 11340345
  (C.D. Cal. May 28, 2008) ........................................................................... 11

*UL LLC v. Gangsong Group Corp.*,
  No. 2:17-cv-08166-DSF, 2019 WL 1925455
  (C.D. Cal. Apr. 30, 2019) (Fischer, J.) .................................................... 11

*Under Armour, Inc. v. 51nfljersey.com*,
  No. 13-62809-cv, 2014 WL 1652044 (S.D. Fla. Apr. 23, 2014) ......... 15

*Ward v. RageOn, Inc.*,
  No. 1:2019cv01935 (S.D.N.Y.) (filed February 28, 2019) ..................... 5

<u>**TABLE OF AUTHORITIES**</u><br>(Continued)

**Page(s)**

*Warner Bros. Entm't, Inc. v. Caridi*,
  346 F. Supp. 2d 1068 (C.D. Cal. 2004) ............................................................ 11

**FEDERAL STATUTES**

15 U.S.C. (Lanham Act) ........................................................ 7, 8, 9, 13, 14, 15
  § 1114 ........................................................................................................ 9
  § 1116(a) .................................................................................................. 14
  § 1116(d)(1)(B) ......................................................................................... 9
  § 1117(c) .................................................................................................. 14
  § 1125(a) .................................................................................................. 14

17 U.S.C. [Copyright Act] ................................................ 7, 8, 10, 13, 14, 15, 16
  § 412 ......................................................................................................... 10
  § 504(c) .................................................................................................... 14

50 U.S.C. (Servicemembers Civil Relief Act)
  § 521 .......................................................................................................... 7

**RULES**

Federal Rules of Civil Procedure
  Rule 55(a) ................................................................................................ 13

Local Rule 55-1 ............................................................................................ 7

Local Rule 55-3 .......................................................................................... 16

**OTHER AUTHORITIES**

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
  § 30:1 (4th ed.) ........................................................................................ 14

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Atari Interactive, Inc. ("Plaintiff" or "Atari") respectfully submits this memorandum in support of its Application for Default Judgment against defendant RageOn, Inc. ("Defendant" or "RageOn").

## I.    INTRODUCTION

ATARI is one of the most iconic names in video game history.  Atari owns the registered ATARI® trade name and logo, the registered PONG® trade name, and copyrights in the myriad Atari video games.  Atari actively licenses its intellectual property portfolio, including on apparel.  Below are examples of officially licensed Atari apparel.



1   RageOn is a serial intellectual property infringer.  Below are just a few of the

2   many examples of counterfeit Atari products advertised, manufactured, and sold by

3   RageOn.

  



22   Atari sued RageOn for intellectual property infringement.  RageOn defaulted.

23   Atari now respectfully requests a default judgment against RageOn that includes an

24   injunction, maximum statutory damages, and attorney's fees.  The requested relief is

25   necessary and appropriate for several reasons:

26   First, RageOn manufactured, marketed, and sold a multitude of different

27   designs that feature Atari trademarks and copyrights.

28   Second, RageOn continued to market and sell Atari counterfeits even after

being placed on notice of this lawsuit.  For example, below are pictures of products with the ATARI name, logo, and game art that are still being promoted and sold on RageOn to this day!



Third, RageOn has been sued multiple times for analogous intellectual property infringement.  None of the prior suits has deterred RageOn.

Fourth, RageOn is actually aware of this lawsuit and is deliberately refusing to participate.

Fifth, RageOn's intentional infringement is not limited to Atari.  RageOn continues to market and sell counterfeits of a variety of well-known brands, from Coca-Cola to Cadillac to the Boston Celtics to many, many more.  In short, if one wants a counterfeit item of his or her favorite brand, chances are that he or she will find it with a couple clicks of a button on rageon.com.

The aforementioned circumstances, described in more detail below, counsel strongly in favor of the requested default judgment.

## II.   STATEMENT OF FACTS

### A.   Atari Owns the Intellectual Property that RageOn Infringed.

Atari is the owner of well-known and valuable intellectual properties, including but not limited to (i) registered trademarks in the famous Atari trade name, "Fuji" logo design, and "PONG" word mark, including for clothing; (ii) registered

copyrights in such video games as *Combat*, *Centipede*, *Warlords*, *Pong*, and *Asteroids*; and (iii) common law rights in such materials as the trade dress of the Atari 2600 game console, and joystick.  Complaint, Dkt. No. 1 ("Compl.") at ¶¶ 6-14 & Exs. 1-2.

### B.   RageOn Manufactured, Marketed, and Sold Myriad Counterfeit Atari Products.

RageOn is advertising, creating, and selling large quantities of counterfeit Atari products.  *Id.* at ¶17.  Some examples of the counterfeit products can be found at Exhibit 3 to the Complaint.  Others can be found in Exhibits A, E, & F to the Wesley Declaration filed concurrently herewith ("Wesley Decl.").

### C.   RageOn Continued to Infringe After Being Notified of the Lawsuit.

Atari sued RageOn in this action for trademark infringement and counterfeiting and copyright infringement, as well as related intellectual property violations.  The summons and complaint were served on RageOn's registered agent, Cogency Global Inc., on Friday, December 27, 2019.  Dkt. 11.  Weeks after service, RageOn continued to infringe.  Wesley Decl., ¶ 3, Ex. A.  Indeed, RageOn continues to infringe to this day.  *Id.*, Ex. F.

### D.   RageOn is Actually Aware of this Lawsuit.

RageOn is deliberately refusing to participate in this lawsuit.  RageOn's CEO, Mike Krilivsky, has e-mailed plaintiff's counsel several times both before and after entry of the default.  Wesley Decl., ¶ 4, Ex. B.

Indeed, in a bizarre turn, on January 23, 2020 – i.e., after RageOn's response to the complaint was due – Mr. Krilivsky e-mailed counsel for Atari, as well as a New York-based lawyer (Betty Tufariello) who purports to represent RageOn.  In the e-mail, Mr. Krilivsky stated, among other things, that he believed Ms. Tufariello had received an extension of time to respond to the complaint from a lawyer named "Daniel Sahad."  Mr. Krilivsky even went so far as to attach a screenshot of a text, purportedly from a Mr. Sahad to his lawyer, seemingly confirming an extension of

time to answer the complaint.  *Id.*  There was a problem, however, with Mr.
Krilivsky's story.  There is no lawyer on the complaint named Daniel Sahad.  Indeed,
there is no lawyer at plaintiff's counsel's firm named Daniel Sahad.  In fact, there is
not even a lawyer licensed to practice in California named Daniel Sahad.  After
confronted with this reality, Ms. Tufariello went silent.  Wesley Decl., ¶ 5, Ex. C.

We will not attempt to hazard a guess as to the source or motivations of Mr.
Krilivsky's "Daniel Sahad" gambit.  What cannot be disputed, however, is that
RageOn is fully aware of this lawsuit and is deliberately refusing to participate.

### E.   RageOn's Infringement Extends Far Beyond Atari.

RageOn has been sued before for trademark and copyright infringement.[1]
Despite those lawsuits and this one, RageOn appears to continue to infringe the
intellectual property rights of well-known brands with impunity.  For example, below
are examples of products currently being offered for sale on RageOn's website.
Wesley Decl., ¶ 6, Ex. D.

  

---

[1] *See, e.g., Ward v. RageOn, Inc.*, No. 1:2019cv01935 (S.D.N.Y.) (filed February 28,
2019); *Taieb v. Rageon, Inc.*, No. 2:2018cv04960 (C.D. Cal.) (filed June 4, 2018);
*Feingold v. RageOn, Inc.*, No. 1:18-cv-02055 (S.D.N.Y.) (filed Mar. 7, 2018);
*Pokemon Co. Int'l, Inc. v. RageOn, Inc.*, No. 2:15-cv-01265 (W.D. Wash.) (filed Aug.
11, 2015).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16 **III.    ARGUMENT**

17     **A.    The Court Should Enter a Default Judgment**

18         **1.    Legal Effect of the Entry of Default**

19     Ordinarily, a default establishes the defendant's liability.  "The general rule of

20 law is that upon default the factual allegations of the complaint, except those relating

21 to the amount of damages, will be taken as true."  *Geddes v. United Financial Group*,

22 559 F.2d 557, 560 (9th Cir. 1977).  Allegations as to damages  must be proven.

23 *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).  "Where

24 damages are ascertainable from definite figures contained in the documentary

25 evidence, default judgment may be entered without a damages hearing."  *Hsaio &*

26 *Montano, Inc. v. Rack in the Cases Ltd.*, No. 10-cv-3411-DSF, 2011 WL 13214024 at

27 *1 (C.D. Cal. Jan. 20, 2011) (Fischer, J.) (citing *Dundee Cement Co. v. Howard Pipe*

28 *& Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).

2.    **The Court Has Subject Matter Jurisdiction and Personal Jurisdiction Over RageOn**

Taking the well-pled allegations of the Complaint as true, this Court has personal jurisdiction over RageOn because it maintains offices in California and infringed upon Atari's intellectual properties in this state.  Compl. ¶ 5.  This Court also has subject matter jurisdiction over this dispute because the bulk of the claims arise under the Copyright Act and Lanham Act.  *Id.* ¶ 3.  It has pendant jurisdiction over the remaining claims.  *Id.*

3.    **Atari has Satisfied the Procedural Requirements for Obtaining a Default Judgment Against the Defendants**

Pursuant to Local Rule 55-1, the Declaration of Keith J. Wesley, filed concurrently herewith states:

(1)   Default was entered against RageOn on January 20, 2020.

(2)   Default was entered on the Complaint filed on December 20, 2019.

(3)   RageOn is not an infant or incompetent person.

(4)   The Servicemembers Civil Relief Act (50 App. U.S.C. § 521) does not apply.

(5)   This application is being served on RageOn's agent for service of process (as well as via e-mail to RageOn's New York-based counsel).  Wesley Decl., ¶ 2.

4.    **The Ninth Circuit's *Eitel* Factors Strongly Favor the Court Granting this Application**

The Ninth Circuit has enumerated the following factors for a district court to consider when determining whether to grant an application for default judgment:

(1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the Complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong public policy underlying the Federal Rules of Civil

1   Procedure favoring decisions on the merits.

2   *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "In applying this

3   discretionary standard, default judgments are more often granted than denied."

4   *PepsiCo. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).  Here, the *Eitel*

5   factors weigh heavily in favor of granting this application.

6              a.       <u>**Atari will Suffer Prejudice if Default Judgment is not**</u>

7                        <u>**Entered**</u>

8        If a default judgment is not entered, RageOn will effectively be permitted to

9   continue infringing Atari's properties, thus resulting in significant harm to Atari as

10  well as a significant likelihood of consumer confusion.  Moreover, RageOn will have

11  been permitted to retain the revenue it previously siphoned from Atari through its

12  infringement.  Absent a default judgment, Atari will have no recourse.  *See PepsiCo.*

13  *v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("potential prejudice

14  to [plaintiff] favors granting a default judgment.").  This factor thus weighs strongly

15  in favor of the granting of this application.

16             b.       <u>**The Complaint is Sufficient and its Claims are**</u>

17                       <u>**Supported by Substantial Evidence**</u>

18       *Eitel* factors two and three, read together, "require that a plaintiff state a claim

19  on which [it] may recover."  *Cal. Sec. Cans.*, 238 F. Supp. 2d at 1175 (citations and

20  quotations omitted); *see also Philip Morris USA Inc. v. Castworld Productions, Inc.*,

21  219 F.R.D. 484, 499 (C.D. Cal. 2003).  Here, not only did the Complaint allege all the

22  necessary elements for all causes of action stated therein, but (while not required to do

23  so) Atari even presented compelling evidence proving its claims.[2]

24

25

26  _____

27  [2] All of Atari's claims are analogous to and/or derivative of its federal Lanham Act
    and Copyright Act claims.  Atari thus focuses herein on the elements and allegations

28  related to the direct trademark and copyright claims.

**(i)**    **RageOn is Liable to Atari for Trademark Infringement and Counterfeiting**

To succeed on its claim for trademark infringement, Atari would have to show "that (1) it has a protectable ownership interest in the mark and (2) [RageOn's] use of the mark is likely to cause customer confusion." *Microsoft Corp. v. Buy More, Inc.*, 136 F. Supp. 3d 1148, 1156 (C.D. Cal. 2015); *see also* 15 U.S.C. § 1114.  As explained in section III(B) below, the damages Atari seeks for its trademark infringement claim are the statutory damages for willful trademark counterfeiting set forth in the Lanham Act.  The Lanham Act defines the term "counterfeit mark" to mean "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use[.]"  15 U.S.C. § 1116(d)(1)(B).

In the Complaint, Atari identifies trademark registrations for the "ATARI" name and logo and "PONG" word mark for use on such things as "articles of clothing."  Compl. ¶ 13(a).  Atari also provides documentation evidencing these registrations in Exhibits 1 and 2 to the Complaint.  *Id*. Exs. 1, 2.  Atari includes screenshots of items being offered for sale and sold by RageOn that not only bear marks that are "confusingly similar" to these, but that are *exact replicas* of them that have been placed items in the categories for which Atari's registration applies (e.g. t-shirts, sweatshirts, etc.).  *Id*. ¶ 17, Ex. 3.  And in its allegations in paragraphs 24 through 34 of the Complaint, Atari reiterates these facts and otherwise correctly recites all necessary elements for a finding of willful trademark infringement and counterfeiting.  *Id*. ¶¶ 24-34.  The allegations sufficient to support Atari's claim for willful trademark infringement and counterfeiting have been properly pled, therefore, and the available evidence supports the allegations.  As such, Atari has satisfied its burden with respect to the second and third *Eitel* factors in connection with this claim.

**(ii)**   <u>RageOn is Liable to Atari for Willful Copyright</u>
<u>Infringement</u>

To support a claim for copyright infringement, Atari would have to show that it owned a valid copyright in the applicable works and that RageOn copied original elements of Atari's works.  *See Feist v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.").  To be entitled to statutory damages and attorney fees under the Copyright Act, it would have to further show that its registrations predate the commencement of RageOn's infringement.  *See* 17 U.S.C. § 412.  Copyright infringement is considered "willful" for purposes of statutory damages where a defendant infringes with one of three mental states with respect to the plaintiff's copyrights:  "actual knowledge, willful blindness, or recklessness."  *Erickson Productions, Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019).

Atari alleges in the Complaint that it is the owner of copyright registrations for the works *Combat*, *Centipede*, *Warlords*, *Pong*, and *Asteroids*.  Compl. ¶ 13(b).  All of these applicable registrations were in effect prior to RageOn's founding, let alone the commencement of its infringement.  The Complaint includes three screenshots of shirts depicting copyrighted imagery from these games and attaches many more in Exhibit 3.  *Id.* ¶ 18, Ex. 3.  It alleges that the use of Atari's copyrighted works in these ways amounts to willful infringement in light of such factors as the sheer volume of infringing goods and RageOn's pattern of infringing behaviors.  *Id.* ¶ 19.  The willfulness of RageOn's copyright infringement is further underscored by the fact that in at least one of the infringing designs depicted in the Complaint, RageOn even reproduced Atari's original copyright notice, confirming that RageOn, the company that transmitted these images and manufactured the articles bearing them, "knew" of Atari's copyright interests.  *See id.* ¶ 18; *see also Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1195 (9th Cir. 2001)

1  ("The jury also heard testimony that Feltner was an experienced businessman who

2  understood the nature of Columbia's copyright infringement claims, and who

3  nonetheless continued to air the series in question until well into the course of this

4  litigation.  This is sufficient to support a finding of willfulness.").  In light of these

5  allegations and the evidence supporting them, Atari has satisfied its burden under the

6  second and third *Eitel* factors in relation to its copyright infringement claim, as well.

7            **c.    Plaintiff's Requested Monetary Award is Reasonable in**

8                    **Light of Defendants' Wrongful Conduct**

9        RageOn willfully misled the public as to the source or origin of the goods

10  offered for sale on its site and profited off of Atari's trademarked and copyrighted

11  materials.  RageOn's refusal to participate in this action has rendered it impossible to

12  determine the extent of its profits generated thereby, however.  This is why courts

13  have repeatedly recognized that it is appropriate, where possible, to apply the Lanham

14  Act's and Copyright Act's statutory damages provisions in default judgment cases.

15  *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008) (finding that

16  authority favored the awarding of statutory damages "in default judgment cases

17  because the information needed to prove actual damages is within the infringers'

18  control and is not disclosed") (citation omitted).

19        Damages at the statutory maximums are often awarded in default judgment

20  cases where there are sufficient allegations in the complaint and there is sufficient

21  evidence offered in support to justify them.  *See Hsaio & Montano, Inc. v. Rack in the*

22  *Cases Ltd.*, No. 10-cv-3411-DSF, 2011 WL 13214024 at *2 (C.D. Cal. Jan. 20, 2011)

23  (Fischer, J.) (awarding $2 million in statutory damages against defaulting defendants

24  in trademark counterfeiting case); *UL LLC v. Gangsong Group Corp.*, No. 2:17-cv-

25  08166-DSF, 2019 WL 1925455 at *1 (C.D. Cal. Apr. 30, 2019) (Fischer, J.) (same);

26  *Warner Bros. Entm't, Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1074 (C.D. Cal. 2004)

27  (awarding statutory damages of $150,000 per copyrighted work infringed by

28  defaulting defendant); *To v. Nguyen*, No. SACV-0700989-JVS, 2008 WL 11340345

at *3 (C.D. Cal. May 28, 2008) (awarding maximum copyright and trademark statutory damages amounts).

Atari's requested monetary award described in section III(B) below is appropriate "in relation to the seriousness of Defendants' conduct." *Pepsico, Inc.*, 238 F. Supp. 2d at 1176; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010) (factor weighed in favor of default judgment in copyright, trademark, breach of contract, and fraud case where plaintiff sought damages in the range of $1,177,827 to $4,900,327).  That is so for several reasons:

First, RageOn manufactured, marketed, and sold not one, not two, not three, but dozens of different designs that feature Atari trademarks and copyrights.

Second, RageOn continued to market and sell Atari counterfeits even after being placed on notice of this lawsuit.

Third, RageOn has been sued multiple times for intellectual property infringement.  None of the prior suits has deterred RageOn.

Fourth, RageOn is actually aware of this lawsuit and is deliberately refusing to participate.

Fifth, RageOn's intentional infringement is not limited to Atari.  To this day, RageOn continues to market and sell counterfeits of a variety of well-known brands, from Coca-Cola to Cadillac to the Boston Celtics to many, many more.

### d.  <u>There is no Reasonable Possibility of a Dispute as to Any Material Facts</u>

Because RageOn defaulted, the allegations in the Complaint relating to liability are all taken as true. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).  Moreover, RageOn had the right and opportunity to dispute facts in this case by appearing in this action.  By ignoring the summons and Complaint and defaulting, RageOn knowingly forfeited this right.  Under these circumstances, there is no reasonable possibility of a dispute as to any material fact. *See Castworld Productions*, 219 F.R.D. at 500.  This *Eitel* factor thus weighs in Atari's favor as well.

### e.    RageOn's Default was not Due to Excusable Neglect

An entry of default judgment may be disfavored when the default stems from excusable neglect on the part of the defaulting party.  There is no excusable neglect here.  RageOn did not simply overlook a deadline or inadvertently fail to appear.  RageOn has been in communication with Atari and has made clear that it is aware of this action and its applicable deadlines.  RageOn has simply declined to participate.  This is not excusable.  *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (no excusable neglect where defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion.").  This *Eitel* factor thus further weighs in Atari's favor.

### f.    Entry of Default Judgment is Consistent with Public Policy Considerations

Although decisions on the merits are favored "whenever reasonably possible," *Eitel*, 782 F.2d at 1472, RageOn's failure to respond to the Complaint does not make a trial on the merits reasonably possible.  Moreover, the overwhelming evidence of intentional infringement by RageOn make it extremely likely that Atari would have prevailed on the merits regardless.  Consequently, the general policy favoring decisions on the merits does not weigh against entry of default judgment here.  *Cal. Sec. Cans.*, 238 F. Supp. 2d at 1177 ("Under FRCP 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend in an action.").

### B.    The Court Should Issue an Injunction and Award Monetary Relief

Atari should be awarded at least the following relief:  (a) an injunction, (b) statutory damages under the Lanham Act and Copyright Act, and (c) attorney's fees and costs.[3]

---

[3]    Plaintiff demanded all of these remedies in the Complaint.  ¶¶38-39, 46-49, 52, & Prayer for Relief.

1. **1.      Plaintiff Should be Granted Injunctive Relief.**

An injunction is available for a violation of 15 U.S.C. Section 1125(a).  15 U.S.C. § 1116(a).  Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988); *see also* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:1 (4th ed.) ("An injunction is the usual and standard remedy once trademark infringement has been found").

An injunction is necessary to stop RageOn's infringement, which continues even since the filing of this case.  Absent an injunction, Atari would effectively be forced against its will to give RageOn a license to use its various properties and would have to bring repeated lawsuits against the company in the future to collect monetary damages.  Such a result would render the Lanham Act's and Copyright Act's protections against infringement illusory and harm the public interest.

2. **2.      Plaintiff Should Be Awarded Statutory Damages**

As shown in section II(A)(4)(b), above, Atari has sufficiently pled and supported its entitlement to statutory damages under both the Lanham Act and Copyright Act.  With respect to the claim for trademark infringement and counterfeiting, the Lanham Act provides for statutory damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c).  As for the copyright infringement claim, the available statutory damages range up to $150,000 per work infringed.  17 U.S.C. § 504(c).

In the Complaint and the materials attached thereto, Atari has shown that RageOn is liable for willful trademark infringement and counterfeiting with respect to the registrations for the "ATARI" name and logo and "PONG" word mark and for willful copyright infringement with respect to the *Combat*, *Centipede*, *Warlords*, *Pong*, and *Asteroids* works.  The appropriate damages figure is thus $4,750,000:

1        $2 million for "ATARI" trademark

2        + $2 million for "PONG" trademark

3        + $150,000 for *Combat* copyright

4        + $150,000 for *Centipede* copyright

5        + $150,000 for *Warlords* copyright

6        + $150,000 for *Pong* copyright

7        + $150,000 for *Asteroids* copyright

8        $4.75 million.[4]

9    **3.    Plaintiff Should Be Awarded Attorney's Fees**

10       The Copyright Act makes attorney fees available depending upon

11   considerations of "frivolousness, motivation, objective unreasonableness (both in the

12   factual and in the legal components of the case) and the need in particular

13   circumstances to advance considerations of compensation and deterrence."  *Fogerty v.*

14   *Fantasy, Inc.*, 510 U.S. 517, 534 n. 19 (1994).

15       Atari has shown that RageOn's infringements at issue in this case are

16   "deliberate" and "willful" and that RageOn has a business model built upon

17   _____

18   [4] In fact, Atari could reasonably be entitled to damages far in excess of this amount,
     as the above calculation treats all clothing as one type of infringing good for purposes

19   of calculating statutory damages under the Lanham Act, whereas courts have often
     sliced infringing defendants' products more finely.  *See, e.g., Abercrombie & Fitch*

20   *Trading Co. v. 2cheapbuy.com*, No. 14-60250-cv, 2014 WL 11706447, at *7 (S.D.
     Fla. June 4, 2014) (holding that 25 types of clothing were separate types of goods,

21   including shirts, t-shirts, tank tops, polo shirts, sweatshirts, sweaters, jeans, pants, and

22   hats); *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-cv, 2014 WL 1652044, at
     *8 (S.D. Fla. Apr. 23, 2014) (holding that 17 different types of clothing were separate

23   types of goods, including t-shirts, shirts, polo shirts, tank tops, sports jerseys,

24   sleeveless jerseys, pants, shorts, and baseball caps); *Rolls-Royce PLC v. Rolls-Royce*
     *USA, Inc.*, 688 F. Supp. 2d 150, 159 (E.D.N.Y. 2010) (holding that 20 different types

25   of clothing were separate types of goods, including athletic shirts, dress shirts, polo

26   shirts, open-necked shirts, long-sleeved shirts, hooded sweatshirts, athletic hats, and
     athletic pants).  Here, RageOn has applied the "ATARI" mark, for example, to goods

27   ranging from cell phone cases to t-shirts to sweatshirts to shower curtains.

28

1  intellectual property infringement.  As such, this is a quintessential case where fees

2  should be awarded under the Copyright Act.

3        Atari therefore requests attorneys' fees pursuant to the schedule in Local Rule

4  55-3.  That Local Rule provides that attorneys' fees for judgments over $100,000

5  should be calculated as $5,600 plus 2% of the amount over $100,000.  Atari has

6  requested this Court to enter judgment of a total of $4,750,000.  Pursuant to the

7  calculation set forth in Local Rule 55-3, therefore, Atari hereby requests an award of

8  attorney fees in the amount of $98,600—*i.e.* $5,600 + ($4,650,000 x .02).

9  **IV.    <u>CONCLUSION</u>**

10        For the foregoing reasons, Atari respectfully requests that a default judgment be

11  entered as follows:

12        •    For an injunction prohibiting the infringement of Atari's

13              copyrights, trademarks, and other intellectual properties;

14        •    For damages totaling $4.75 million; and

15        •    For attorneys' fees in the amount of $98,600.

16        •    For post-judgment interest on the aforementioned sums.

17

18  DATED:  February 24, 2020              Respectfully Submitted,

19                                        BROWNE GEORGE ROSS LLP

20                                            Keith J. Wesley

21                                            Matthew L. Venezia

22

23                                        By:    s/ Keith J. Wesley

24                                            Keith J. Wesley

25                                        Attorneys for Plaintiff ATARI INTERACTIVE,
                                          INC.

26

27

28