# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATARI INTERACTIVE, INC.,<br>            Plaintiff,<br><br>                v.<br><br>RAGEON, INC.,<br>            Defendant. | CV 19-10806 DSF (MAAx)<br><br>Order GRANTING in part<br>Plaintiff's Motion for Default<br>Judgment (Dkt. 14) |

Plaintiff Atari Interactive, Inc. moves for default judgment against Defendant RageOn, Inc.  Dkt. 14 (Mot.).  The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  For the reasons stated below, the motion is GRANTED in part.

## I. BACKGROUND

Plaintiff is a well-known video game brand responsible for games such as Pong, Breakout, and Asteroids.  Dkt. 1 (Compl.) ¶ 6.  Plaintiff has registered trademarks for its name and logo and the "Pong" name for use on posters, stickers, and clothing.  Id. ¶ 13.a.  Plaintiff also has registered copyrights for its video games, including the related visual elements.  Id. ¶ 13.b.  Plaintiff claims common law trademark and trade dress protection in the Atari name and logo, the names and graphics of some of its top games, and the "overall look and feel" of its original game console and joystick.  Id. ¶ 14.

Defendant provides a service that allows customers to upload any design they create to Defendant's website, and then Defendant displays the design on a variety of apparel that it sells on its website.  Id. ¶¶ 15-

16.  Defendant hand makes and prints the items containing the designs, ships them, and processes the payment.  Id. ¶ 16.  Defendant retains 25% of the proceeds from the sale and remits the remaining 75% to the person who uploaded the design.  Id.  Defendant sells, distributes, and profits from "large quantities of counterfeit Atari products" including "products [that] incorporate exact replicas of the registered ATARI trademark (name and logo)," "easily identifiable depictions of the Atari 2600 console and joystick with the distinctive red button," and "copyrights owned by Atari."  Id. ¶¶ 17-18.  Plaintiff alleges on information and belief that Defendant also uses "Atari" as a keyword to bring internet users to Defendant's website.  Id. ¶ 22.

Based on this conduct, Plaintiff brought this action against Defendant asserting claims for direct, contributory, and vicarious trademark infringement and counterfeiting; direct, contributory, and vicarious copyright infringement; trademark dilution; false designation of origin; and common law unfair competition.  Defendant was served on December 27, 2019 through its registered agent.  Dkt. 11 (Proof of Service).  Defendant did not answer or otherwise respond to the Complaint or otherwise appear or participate in this litigation.[1]  Plaintiff applied for entry of default on January 29, 2020.  Dkt. 12 (Default Appl.).  The clerk properly entered default the next day.  Dkt. 13 (Default).  This Motion was also served on Defendant's registered

---

[1] On January 23, 2020, Defendant's CEO informed Plaintiff's counsel that it was being represented by Betty Tufariello, who had purportedly received a two-week extension to respond to the Complaint from someone named Daniel Sahad (or Sahar).  Wesley Decl. Ex. C, at 4-5.  Defendant's counsel stated that she intended to file an Answer no later than January 30, 2020, in compliance with the alleged two-week extension.  Id. at 2.  No agreement was filed with the Court and no answer was ever filed.  Moreover, Defendant's counsel ceased communications with Plaintiff's counsel after Plaintiff's counsel pressed for information about the person named "Daniel Sahar"; no lawyer with that name works Plaintiff's counsel's law firm.  Id. at 1; Mot. at 5.

agent for service of process and its intellectual property attorney, Betty Tufariello.  Dkt. 14-1 (Wesley Decl.) ¶ 2(e).

## II. Legal Standard

Rule 55(b)(2) permits the Court to enter default judgment.  The Court need not make detailed findings of fact in the event of default.  Adriana Int'l Corp. v. Theoren, 913 F.2d 1406, 1414 (9th Cir. 1990).  On entry of default, well pleaded allegations in the complaint regarding liability generally are deemed to be admitted.  DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 851 (9th Cir. 2007).  But defaulting defendants are not "held to admit facts that are not well-pleaded or to admit conclusions of law."  Id. at 854 (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).  Simply parroting the language of a statute, for example, provides only legal conclusions, which are not admitted by default.  Id.  Allegations as to damages must be proven.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

The Court considers several factors "in exercising discretion as to the entry of a default judgment includ[ing]:  (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of the money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## III.  Discussion

### A.    Jurisdiction

Where, as here, "entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."  In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999).

The Court has subject-matter jurisdiction over Plaintiff's trademark and copyright claims, and supplemental jurisdiction over Plaintiff's state-law claim.  As to personal jurisdiction, although it ordinarily is a defense that may be waived, it may not be presumed where a plaintiff seeks default judgment.  See id. at 712 ("A judgment entered without personal jurisdiction over the parties is void.").  Plaintiff has adequately pleaded that it has personal jurisdiction over Defendant because it has purposely directed its activities towards California and its residents.  See Compl. ¶ 5.

**B.    Eitel Factors**

The first Eitel factor weighs in Plaintiff's favor.  Plaintiff alleges that Defendant manufactures, sells, and distributes products that infringe on Plaintiff's trademarks and copyrights, Compl. ¶¶ 15-23, and has continued to do so despite being made aware of this lawsuit, Wesley Decl. ¶¶ 3,7 & Exs. A, E.  Plaintiff has no means to obtain Defendant's compliance with the copyright and trademark laws other than through this litigation.  Plaintiff would therefore be prejudiced because it would continue to suffer harm to its intellectual property, and Defendant would be permitted to continue earning profits from its infringing activities to Plaintiff's detriment.  Defendant cannot escape liability by refusing to participate in the judicial process and Plaintiff has incurred expenses in prosecuting this action.

The second and third Eitel factors weigh in favor of granting default judgment for some of Plaintiff's claims, but not others.  Plaintiff asserts nine claims for relief all based on Defendant's alleged improper use of Plaintiff's trademarks and copyrights.  Plaintiff contends that because each claim is "analogous to and/or derivative of its federal Lanham Act and Copyright Act claims," it "focuses . . . on the elements and allegations related to the direct trademark and copyright claims."  Mot. at 8 n.2.  However, the Court cannot grant default judgment as to claims without any legal analysis whatever.  See, e.g., DIRECTV, 503 F.3d at 854-55 (affirming district court's refusal to enter default judgment because complaint failed adequately to state violations); Cripps v. Life Ins. Co. of North America, 980 F. 2d 1261, 1267-68 (9th

Cir. 1992) (setting aside legally insupportable default judgment); <u>Alan Neuman Productions v. Albright</u>, 862 F.2d 1388, 1392-93 (9th Cir. 1988) (reversing default judgment on RICO claims because the complaint failed properly to allege claims).  Plaintiff fails to explain the elements of the other causes of action or address any ways in which those elements differ from the direct infringement claims (or in the alternative cite any case law indicating that success on one claim equates to success on another).[2]  It is not the role of the Court to make the parties' arguments for them.  <u>See</u> <u>Indep. Towers of Wash. v. Wash.</u>, 350 F. 3d 925, 929 (9th Cir. 2003).  The Court is inclined to dismiss the seven causes of action Plaintiff has not addressed unless Plaintiff submits supplemental briefing on each cause of action by April 13, 2020.  Plaintiff's failure to address a cause of action sufficiently by that date will be deemed consent to dismissal of that cause of action.

## 1.      Trademark Infringement and Counterfeiting (First Claim for Relief)

The Lanham Act creates civil liability for "[a]ny person who shall, without the consent of the registrant—(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1)(a); <u>see also</u> <u>Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.</u>, 174 F.3d 1036, 1046 (9th Cir. 1999) (To state a claim for trademark infringement under the Lanham Act, plaintiff must allege: (1) ownership of a valid, legally protectible mark; and (2) a likelihood of confusion between the plaintiff's mark and a mark utilized by the defendant).  Plaintiff has adequately pled all of the necessary elements of a trademark infringement claim.  It alleges that it has registered

---

[2] For example, a trademark dilution claim differs materially from a trademark infringement claim.  <u>Visa Int'l Serv. Ass'n v. JSL Corp.</u>, 610 F.3d 1088, 1090 (9th Cir. 2010) ("Dilution isn't confusion; quite the contrary. Dilution occurs when consumers form new and different associations with the plaintiff's mark.").  .

trademarks and that Defendant used Plaintiff's trademarks "or nearly identical variations thereof" without consent and in a manner that "is likely to cause confusion among ordinary purchasers as to the source of the goods." Compl. ¶¶ 13(a), 17, 25-29 & Exs. 1-3.  Specially, Plaintiff alleges that it "has an active licensing business through which Atari has extended its brand into other media, merchandising, and publishing categories" and it obtained trademarks for, among other things, use on posters, stickers, and articles of clothing. Id. ¶¶ 12-13(a).  This is sufficient.  Brookfield Commc'ns, 174 F.3d at 1056 ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course.").

### 2.     Copyright Infringement (Second Claim for Relief)

"A plaintiff bringing a claim for copyright infringement must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Funky Films, Inc. v. Time Warner Entm't, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).  "[T]he second element has two distinct components: 'copying' and 'unlawful appropriation.'" Rentmeester v. Nike, Inc., 883 F.3d 1111, 1117 (9th Cir. 2018), cert. denied, 139 S. Ct. 1375 (2019).  "By establishing reasonable access and substantial similarity, a copyright plaintiff creates a presumption of copying." Three Boys Music Corp. v. Bolton, 212 F.3d 477, 486 (9th Cir. 2000).  "Circumstantial evidence of reasonable access is proven in one of two ways: (1) a particular chain of events is established between the plaintiff's work and the defendant's access to that work (such as through dealings with a publisher or record company), or (2) the plaintiff's work has been widely disseminated." Id. at 482.  Plaintiff has adequately pled all of the necessary elements of a copyright infringement claim.  It alleges that it has registered copyrights in a number of its top games, Compl. ¶¶ 13(b), 36, that Plaintiff's games were widely disseminated demonstrating Defendant's access, id. ¶ 37, and the works were strikingly similar or identical, id. ¶ 18, 37 & Ex. 3.

The remaining factors favor default judgment.  Because of Defendant's refusal to participate in this action, Plaintiff has no way to determine the amount of profits Defendant earned from its extensive and willful trademark and copyright infringement.  Plaintiff therefore requests an award of $4,750,000 in statutory damages based on Defendant's willful infringement of two trademarks and five copyrights on "large quantities" of items, Compl. ¶17.  The Complaint seeks statutory damages as available under the Lanham Act and the Copyright Act; Defendant was on notice as to the potential damages at stake.  Id. ¶¶ 34, 41 & Prayer for Relief ¶ 6.  Further, based on the facts alleged, the possibility of a dispute concerning material facts is slight.  Because Defendant is apparently aware of this lawsuit and represented by counsel, Defendant's default is unlikely due to excusable neglect.  Defendant was served with the Summons and Complaint three months ago and has yet to respond, despite apparently agreeing to respond by January 30, 2020.  The policy of favoring decisions on the merits does not weigh against entry of default judgment as Defendant has failed to appear, making a decision on the merits impossible.

## C.   Injunctive Relief

Plaintiff seeks to enjoin Defendant from further infringement of Plaintiff's trademarks and copyrights.  Compl., Prayer for Relief ¶ 1.  The Lanham Act gives the Court the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office."  15 U.S.C. § 1116(a).  Similarly, under the Copyright Act, the Court "may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  Injunctive relief is appropriate when a party demonstrates:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff

and defendant, a remedy in equity is warranted; and (4)
that the public interest would not be disserved by a
permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).  The
Court finds that injunctive relief is appropriate here because: (1)
Plaintiff succeeded on the merits of its trademark and copyright
infringement actions and suffered irreparable injury in the form of lost
sales and damage to the reputation and goodwill of Plaintiff's
copyrights and trademarks, see Compl. ¶¶ 20, 23, 32; (2) the Court
doubts legal remedies are adequate to compensate for this harm as
without an injunction Plaintiff would essentially be unwillingly
granting a license that would require bringing lawsuits to get paid; (3)
the equities favor injunctive relief because Defendant will only be
enjoined from selling infringing products, but not other products; and
(4) injunctive relief is in the public interest as the public has a strong
interest in not being deceived as to the origins of a product.  Defendant
has failed to appear in this action and there is no reason to believe that
it will cease its infringing activity absent an injunction.

  For these reasons, Defendant, its officers, agents, servants,
employees and attorneys, and those persons in active concert or
participation with any of them, who receive actual notice of this
judgment by personal service or otherwise, are permanently enjoined
and restrained from infringing on Plaintiff's trademarks and
copyrights, either directly or contributorily, in any manner, including
but not limited to:

  a) designing, manufacturing, importing, shipping, delivering,
selling, marketing, displaying, advertising, or promoting
any product that incorporates designs substantially similar
to Plaintiff's copyrights; and

  b) designing, manufacturing, importing, shipping, delivering,
selling, marketing, displaying, advertising, or promoting
any product that incorporates or is marketed in conjunction
with any of Plaintiff's trademarks or trade dress.

The Complaint also seeks an order requiring Defendant to destroy all infringing goods, id. ¶ 2, and to provide an accounting of all profits obtained by Defendant from sales of the infringing products, id. ¶ 3. However, because Plaintiff does not address this relief in its brief, the Court does not order it. Plaintiff may address this issue no later than April 13.

**D.     Damages**

On establishing trademark or copyright infringement, a plaintiff may elect to recover the defendant's profits and its own damages or statutory damages. 15 U.S.C. § 1117(c) (Lanham Act);[3] 17 U.S.C. § 504(a) (Copyright Act).[4] Here, Plaintiff seeks statutory damages. Under the Lanham Act, the Court can award statutory damages

---

[3] To get statutory damages under the Lanham Act, a plaintiff must also show that "the goods trafficked by the direct infringers were 'counterfeit' as that term is defined in § 1116(d). . . . Section 1116(d) requires that the mark in question be (1) a non-genuine mark identical to the registered, genuine mark of another, where (2) the genuine mark was registered for use on the same goods to which the infringer applied the mark." Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc., 658 F.3d 936, 945-46 (9th Cir. 2011) (citing State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc., 425 F.3d 708, 721 (9th Cir. 2005)). Plaintiff adequately alleges that the clothing items sold by Defendant contained identical copies of Plaintiff's genuine marks and those marks were registered for use on clothing. Compl. ¶¶ 13(a), 17.

[4] To get statutory damages under the Copyright Act, a plaintiff must also show that the copyrights were registered prior to the first infringement. 17 U.S.C. § 412. In its Motion, Plaintiff states "All of these applicable registrations were in effect prior to RageOn's founding, let alone the commencement of its infringement." Mot. at 10. But it provides no citation for this claim and the Complaint does not contain the copyright registrations or otherwise indicate when the copyrights were registered. The Complaint does allege that Defendant was formed "in or around 2015." Compl. ¶ 15. Documents evidencing that Plaintiff's registrations comply with Section 412 must be filed with the Court no later than April 13, 2020. In the absence of such documentation, the Court will enter judgment without an award of damages on the Copyright Act claim.

between $1,000 and $200,000 per counterfeit mark per type of good or, if the use of the mark was willful, up to $2,000,000 per counterfeit mark per type of good.  15 U.S.C. § 1117(c).  The Copyright Act provides for statutory damages between $750 and $30,000 per copyrighted work, or, if the infringement was willful, up to $150,000.  17 U.S.C. § 504(c). Here, Plaintiff seeks $2,000,000 each for willful infringement of the Atari and Pong trademarks and $150,000 each for willful infringement of the copyrights for Combat, Centipede, Warlords, Pong, and Asteroids, totaling $4,750,000.  Plaintiff adequately alleges willful infringement based on:

> (a) the sheer quantity of different counterfeit designs being sold by [Defendant], (b) the exact duplication of a variety of iconic Atari designs, and (c) [Defendant's] pattern and practice of infringing upon the intellectual property rights of well-known brands.

Compl. ¶ 19; see also id., Ex. 3.  Plaintiff further alleges that "in at least one of the infringing designs depicted in the Complaint, [Defendant] even reproduced [Plaintiff's] original copyright notice, confirming that [Defendant], the company that transmitted these images and manufactured the articles bearing them, 'knew' of Plaintiff's copyright interests."  Id. ¶ 18.  Moreover, although the exact amount of sales of infringing products is unknown due to Defendant's failure to participate in this lawsuit, Plaintiff alleges that Defendant sold "large quantities of counterfeit Atari products" and included pictures of many examples.  Id. ¶ 17 & Ex. 3.

However, the Court declines to award the requested maximum statutory damage amounts.  The Court has broad "discretion in determining the amount of statutory damages to be awarded."  Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984) (citing L.A. Westermann Co. v. Dispatch Printing Co., 249 U.S. 100 (1919)).  The Court concludes that a $4 million award for Defendant's trademark infringement would be a windfall.  See BMW of N. Am., LLC v. Zahra, No. C 15-2924 CRB, 2016 WL 215983, at *5 (N.D. Cal. Jan. 19, 2016) (The Court concludes that the $2,000,000 requested by Plaintiffs would

represent 'a windfall.'").  On the face of the Complaint, it appears Defendant sells the infringing products for between $20 and $50 and keeps 25% of those sales.  <u>See</u> Compl. ¶¶ 16-18 & Ex. 3.  This would require hundreds of thousands of infringing products to be sold before Defendant's profits would reach $2 million.  <u>Yelp Inc. v. Catron</u>, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014) (noting that the statutory maximum may be appropriate in cases where "even with a conservative estimate of the price of [the infringing product], the two million dollars in damages awarded to the plaintiff bears a plausible relationship to his actual damages.").  The Court believes that $400,000 per trademark, twice the maximum for non-willful infringement, serves both the compensatory and pecuniary purposes of statutory damages, "tak[ing] all the economic incentive out of trademark infringement."  <u>Playboy Enters., Inc. v. Baccarat Clothing Co.</u>, 692 F.2d 1272, 1275 (9th Cir. 1982).  Therefore, the Court awards $800,000 in statutory damages under the Lanham Act.

## E.   Attorney's Fees

Although a prevailing plaintiff can recover attorney's fees in a trademark infringement action in "exceptional cases," 15 U.S.C. § 1117(a), Plaintiff seeks attorney's fees only under the Copyright Act, 17 U.S.C. § 505.  Mot. at 15.  However, as with statutory damages, a prevailing plaintiff must show that the copyrights were registered prior to the first infringement to receive attorney's fees. 17 U.S.C. § 412. Because Plaintiff has not yet done so, the Court declines to award attorney's fees at this time.  Documents evidencing that Plaintiff's registrations comply with Section 412 must be filed with the Court no later than April 13, 2020.  In the absence of such documentation, the Court will enter judgment without an award of attorney's fees.

## IV. Conclusion

Plaintiff's application for default judgment is GRANTED in part. Defendant is enjoined from infringing Plaintiff's copyrights and trademarks and Plaintiff is awarded $800,000 in statutory damages.

Judgment will be entered in that amount and all remaining claims will
be dismissed if no supplemental briefing is filed by April 13, 2020.

    IT IS SO ORDERED.

Date: April 2, 2020

                                               Dale S. Fischer
                                               United States District Judge