ARASH BERAL (BAR NO. 245219)
arash.beral@ffslaw.com
JEFFREY M. JENSEN (BAR NO. 262710)
jeffrey.jensen@ffslaw.com
FREEMAN, FREEMAN & SMILEY, LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone:  (310) 255-6100
Facsimile:  (310) 255-6200

Attorneys for Defendant
RAGEON, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ATARI INTERACTIVE, INC.,<br><br>              Plaintiff,<br><br>      vs.<br><br>RAGEON, INC.,<br><br>              Defendant. | Case No. 2:19-cv-10806-DSF-MAA<br><br>**DEFENDANT RAGEON, INC.'S EMERGENCY *EX PARTE* APPLICATION FOR AN ORDER FOR RELIEF FROM DEFAULT JUDGMENT, SETTING ASIDE ENTRY OF DEFAULT, AND RECALLING/QUASHING WRIT OF EXECUTION OR, IN THE ALTERNATIVE, FOR TEMPORARY RESTRAINING ORDER PENDING A HEARING ON A NOTICED MOTION FOR THE FOREGOING RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed concurrently with Declarations of Michael Krilivsky and Arash Beral, and [Proposed] Order]*<br><br>Judge:  Hon. Dale S. Fischer |

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4590561.4

1

DEFENDANT RAGEON, INC.'S EMERGENCY *EX PARTE* APPLICATION FOR RELIEF FROM DEFAULT AND
DEFAULT JUDGMENT AND QUASHING WRIT OF EXECUTION

1    Defendant RageOn, Inc. ("RageOn") hereby applies *ex parte*:

2    1.    for an order for relief from the default judgment entered on April 15,

3    2020;

4    2.    for an order setting aside and vacating the default entered on January

5    30, 2020;

6    3.    for an order recalling and quashing the writ of execution issued on June

7    24, 2020; and

8    4.    in the alternative, for a temporary restraining order prohibiting plaintiff

9    Atari Interactive, Inc. ("Atari") from taking any enforcement action on the default

10   judgment (and returning to RageOn any funds it may have collected in connection

11   with any enforcement action on the default judgment) until after the Court conducts

12   a hearing on a noticed motion for relief from default and default judgment and an

13   order recalling and quashing the writ of execution.

14   This *Ex Parte* Application is made under Federal Rules of Civil Procedure

15   55(c) and 60(b) on the ground that RageOn's attorney abandoned it.

16   This *Ex Parte* Application is based upon the attached Memorandum of Points

17   and Authorities; the Declaration of Mike Krilivsky; the Declaration of Arash Beral;

18   all of the pleadings, files and records in this proceeding; and any argument or

19   evidence that may be presented to or considered by the Court if a hearing is

20   conducted on this matter.

21

22   DATED: July 6, 2020                    FREEMAN, FREEMAN & SMILEY, LLP

23

24   By:    */s/ Arash Beral*

25   ARASH BERAL
     JEFFREY M. JENSEN
26   Attorneys for Defendant
     RAGEON, INC.
27

28

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4590561.4

2

DEFENDANT RAGEON, INC.'S EMERGENCY *EX PARTE* APPLICATION FOR RELIEF FROM DEFAULT AND
DEFAULT JUDGMENT AND QUASHING WRIT OF EXECUTION

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................................................1

II.    STATEMENT OF RELEVANT FACTS .........................................................3

III.   LEGAL ARGUMENT .......................................................................................5

    A.     RageOn Did Not Engage in Culpable Behavior ....................................6

    B.     RageOn Has Meritorious Defenses ........................................................7

    C.     Setting Aside Default Will Not Prejudice Atari ...................................12

    D.     This Application Is Timely ...................................................................12

    E.     The Writ of Execution is Invalid if the Court Vacates the Default
          Judgment ...............................................................................................13

    F.     Temporary Restraining Order ...............................................................13

IV.    CALIFORNIA CIVILITY AND PROFESSIONALISM GUIDELINES
      EXPRESSLY ADVISE AGAINST PLAINTIFF'S COUNSEL'S
      TACTICS ........................................................................................................14

V.     RAGEON PROVIDED NOTICE UNDER LOCAL RUE 7-19 ....................15

VI.    CONCLUSION ................................................................................................15

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4590561.4

i

DEFENDANT RAGEON, INC.'S EMERGENCY *EX PARTE* APPLICATION FOR RELIEF FROM DEFAULT AND
DEFAULT JUDGMENT AND QUASHING WRIT OF EXECUTION

## **TABLE OF AUTHORITIES**

**Page**

Cases

*Brownmark Films, LLC v. Comedy Partners*, 800 F. Supp. 2d 991 (E.D. Wis. 2011), aff'd, 682 F.3d 687 (7th Cir. 2012)..............................................10

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 560 (1994) ...............................11

*Carter v. Albert Einstein Med. Ctr.*, 804 F.2d 805 (3d Cir. 1986) ........................6

*Cmty. Dental Servs. v. Tani*, 282 F.3d 1164 (9th Cir. 2002)................................5, 6

*DH Holdings, LLC v. Meridian Link, Inc.*, No. CV 09-9117 ABC, 2010 WL 11597616, at *5 (C.D. Cal. Apr. 9, 2010)......................................................13

*Hot Diggity Dog, LLC, Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002)..................................................................................................10

*Louis Vuitton Malletier v.  My Other Bag*, 156 F. Supp. 425 (S.D.N.Y. 2016), *aff'd.* 674 Fed.Appx. 16 (2d Cir. 2016)...............................................................9

*Louis Vuitton Malletier, S.A. v. Hot Diggity Dog, LLC*, 507 F.3d 252 (4th Cir. 2007) ..............................................................................................................9

*Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045 (9th Cir. 2017).......10

*Ohio State University v. Redbubble, Inc.*, 369 F. Supp. 3d 840 (SD Ohio 2019).......8

*People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359 (4th Cir. 2001)..................................................................................................9

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993) ........7

*TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691 (9th Cir. 2001) ....................7, 12

*Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010)...................................8

*U.S.-China Assets Mgmt. USA LLC v. Amico Int'l Corp.*, No. CV 09-01596 ABC, 2009 WL 10700142, at *4 (C.D. Cal. Nov. 19, 2009)........................13

*United States v. Aguilar*, 782 F.3d 1101 (9th Cir. 2015)..................................8

*United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085 (9th Cir. 2010) ................................................................................6, 7, 8

*Winter v. Natural Resources Defense Council, Inc.*, 555 US 7 (2008) ....................13

Statutes

15 U.S.C. § 1114(2)(A) 1114(2)(A) ..............................................................11

15 U.S.C. § 1117(c)(2) ...........................................................................11

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4590561.4

ii

DEFENDANT RAGEON, INC.'S EMERGENCY *EX PARTE* APPLICATION FOR RELIEF FROM DEFAULT AND DEFAULT JUDGMENT AND QUASHING WRIT OF EXECUTION

15 U.S.C. § 1125(a) ........................................................................... 11

17 U.S.C. § 504(c)(2) ........................................................................ 11

17 U.S.C. § 512(a)–(d) ..................................................................... 10

<u>Other Authorities</u>

Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial, § 13:43 .............................. 13

Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial, § 6:143 ................................ 6

<u>Rules</u>

Fed. R. Civ. P. 55(c) .......................................................................... 5

Fed. R. Civ. P. 60(b) .............................................................. 5, 12, 13

Fed. R. Civ. P. 60(b)(1) ............................................................ 5, 7, 13

Fed. R. Civ. P. 60(b)(3) ................................................................... 13

Fed. R. Civ. P. 60(b)(6) ................................................................. 5, 6

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4590561.4

iii

DEFENDANT RAGEON, INC.'S EMERGENCY *EX PARTE* APPLICATION FOR RELIEF FROM DEFAULT AND
DEFAULT JUDGMENT AND QUASHING WRIT OF EXECUTION

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

When stripped to its core, this action involves only $189.10 in total sales (*not profit, but sales*) of the accused products generated from sources other than Plaintiff Atari Interactive, Inc.'s ("Atari") counsel's office itself.  And while Defendant RageOn, Inc. ("RageOn") had been led to believe that its own counsel was handling this matter and also by Atari's counsel that all was fine, Atari swooped in and – unbeknownst to RageOn and all the while snubbing its nose at all applicable civility and professionalism guidelines – extracted a judgment in the amount of *$1,125,600* against RageOn.  Atari then enforced a Writ of Execution, draining all $882,000 from RageOn's bank account, leaving RageOn to *first* discover that a judgment had been entered against it.

First and foremost, this action reeks of egregious conduct on the part of RageOn's counsel who allowed RageOn to suffer the consequences of a default and default judgment without ever informing RageOn that it was at risk nor taking any action to preserve RageOn's rights in this lawsuit.  In fact, quite the opposite, counsel led RageOn to believe that this matter was well under control.  Second, this situation was only further exacerbated by Atari's counsel who, despite a number of communications, refused to alert RageOn of Atari's undisclosed efforts at obtaining a default and default judgment.

By this emergency application, RageOn applies *ex parte* for an order for relief from and setting aside the default judgment entered on April 15, 2020 (the "Default Judgment") and the default entered on January 30, 2020 (the "Default") and recalling and quashing the writ of execution issued on June 24, 2020 (the "Writ of Execution).  In the alternative, RageOn asks for a temporary restraining order to prevent Atari from executing on the Writ of Execution or taking other actions to enforce the Default Judgment until the Court hears a noticed motion on these issues. Enforcement actions—including Atari's efforts in completely depleting RageOn's

DEFENDANT RAGEON, INC.'S EMERGENCY *EX PARTE* APPLICATION FOR RELIEF FROM DEFAULT AND
DEFAULT JUDGMENT AND QUASHING WRIT OF EXECUTION

1  bank account—will drive RageOn out of business, render it unable to pay

2  employees both future wages and wages already earned, and leave its employees

3  scrambling to find work during the worst economic crisis in recent memory.

4         Relief from the Default Judgment and the Default is appropriate in this case

5  under Federal Rule of Civil Procedure 60(b) and Ninth Circuit precedent because

6  RageOn came to learn that its counsel abandoned it during the litigation.  As this

7  case headed to default judgment, RageOn's counsel led RageOn to believe she was

8  handling the matter appropriately.  When RageOn became concerned about

9  counsel's responsiveness, counsel dodged or ignored RageOn's many requests for

10  updates on active litigation.  She also refused to deliver any case files to RageOn.

11  RageOn had no idea it was subject to a default judgment until the U.S. Marshal's

12  Office seized all of RageOn's money from its bank account.

13        Relief must be granted on an emergency, expedited basis to avoid irreparable

14  harm.  RageOn was struggling financially at the beginning of the COVID-19

15  pandemic.  Its CEO gave up his salary and nearly all employees took pay cuts.

16  RageOn was and is in debt to service providers and vendors.  Only through selling

17  face masks was RageOn able to grow its bank account from almost nothing to the

18  approximately $882,000 that was seized under the Writ of Execution.  Without that

19  money, RageOn cannot pay employees for work already performed, cannot pay

20  debts owed, and will be driven out of business in short order.

21        RageOn is an online seller of merchandise (primarily clothing and coffee

22  mugs) designed by third parties.  RageOn does not participate in the design process

23  at all.  Atari alleges that RageOn sold some shirts and a phone case designed by

24  third parties that contain Atari's trademarks or copyrights related to its video game

25  systems. Upon review, RageOn generated no more than $500 in total sales of

26  products (accused and unaccused) related to Atari—and much of those sales appear

27  to have been to Atari's counsel's paralegal (who likely colluded with Atari to

28  manufacture the claims in this lawsuit).  Atari never tendered a takedown notice to

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

DEFENDANT RAGEON, INC.'S EMERGENCY *EX PARTE* APPLICATION FOR RELIEF FROM DEFAULT AND
DEFAULT JUDGMENT AND QUASHING WRIT OF EXECUTION

1  RageOn, nor did it otherwise ever inform RageOn that its alleged intellectual

2  property rights were being violated in any way on RageOn's website.  An award of

3  $1,125,600 against a couple hundred dollars of gross sales is extreme.

4       Equally important, RageOn has meritorious defenses to liability.  Atari cannot

5  prevail on its trademark claims because precedent shows an internet seller must have

6  knowledge of the allegedly infringing goods to be liable.  RageOn did not have the

7  knowledge, however, because its systems are largely automated, and in fact,

8  RageOn tries to keep infringing material off its website.  Moreover, and among

9  other things, Atari cannot prevail on its copyright claims because RageOn falls

10 within the safe harbor of the Digital Millennium Copyright Act.

11      For all of these and the reasons discussed below, RageOn asks this Court to

12 grant this Application.

13 **II.**    **STATEMENT OF RELEVANT FACTS**

14      RageOn is an online seller of merchandise, primarily clothing and coffee

15 mugs.  Declaration of Michael Krilivsky ("Krilivsky Decl.") ¶ 2.  RageOn allows

16 users to create their own designs and sell merchandise through RageOn's website.

17 *Id*.  Atari alleges that it owns trademarks and copyrights related to the Atari video

18 game brand.  Atari alleges that RageOn sold merchandise bearing Atari's

19 trademarks and copyrights.  Complaint, Doc. No. 1.  All accused products were

20 created by third parties and sold through RageOn's site, generating only a couple

21 hundred dollars in sales (some of which sales appear to be from a third party that

22 may be connected to Atari itself).  Krilivsky Decl., ¶¶ 2, 18, 22-29.

23      On December 26—even before Atari served the Complaint on RageOn—a

24 law firm alerted RageOn to the existence of this lawsuit by email.  The next day,

25 RageOn forwarded the law firm's email to its counsel, the Law Offices of P.B.

26 Tufariello, P.C. ("Counsel").  Krilivsky Decl., ¶ 5, Exh. "B".  Also on December 27,

27 RageOn received email notice from its agent for service of process, which it

28 forwarded to Counsel.  Counsel responded by email that she would look at the

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4590561.4

3

1    documents and contact RageOn the next day.  Krilivsky Decl., ¶ 6, Exh. "C".

2         After several follow-ups, Counsel finally responded on January 16, 2020

3    stating: "Atari and I are in discussions. I have 21 days. And he is aware if [sic] my

4    traveling." Krilivsky Decl., ¶ 7, Exh. "D".  RageOn was also in touch with Atari's

5    counsel.  Mike Krilivsky of RageOn in fact communicated via email and phone with

6    Keith J. Wesley, Esq., counsel for Atari, on January 23, 2020.  Once Mr. Wesley

7    was reminded that some extension had been worked out among counsel, he

8    confirmed to Mr. Krilivsky that all would be fine.  Krilivsky Decl., ¶¶ 8, 19, Exh.

9    "E".  All was not fine, however, as RageOn has now discovered that Atari's counsel

10   had concealed his plan to default RageOn.

11        On January 24, 2020, Counsel informed RageOn that she had responded "to

12   Keith in the Atari case."  Krilivsky Decl., ¶ 9, Exh. "F".  Communications between

13   RageOn and Counsel and RageOn and Mr. Wesley continued for weeks.  Krilivsky

14   Decl., ¶¶ 10-14, Exhs. "G", "H", "I", and "J".  At no point did *anybody* inform

15   RageOn that it was at risk of an impending default or default judgment; indeed,

16   RageOn was not served with any default papers whatsoever and Mr. Wesley, for his

17   part, simply went silent on RageOn.

18        In March, RageOn had come to learn that the COVID-19 pandemic had

19   caused courts to halt cases.  Receiving no updates on the Atari matter, RageOn

20   assumed – perhaps naively – that the case (if it was even active) was on hold.

21   Krilivsky Decl., ¶ 15.  Once states and counties began opening up again, RageOn

22   texted Counsel on June 21, 2020 to ask for an update on all of its matters.  She did

23   not respond.  RageOn texted again on July 1, 2020, and she did not respond to that

24   text either.  Krilivsky Decl., ¶ 16, Exh. "K".

25        RageOn learned about the Default Judgment and Writ of Execution for the

26   first time on June 29, 2020 when RageOn discovered its bank account was empty.

27   Krilivsky Decl., ¶ 17.  When RageOn's CEO called the bank, he learned that the

28   money was seized by the U.S. Marshal because of this case.  *Id*.  After several

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4590561.4

4

1  follow-up communications with Atari's counsel went nowhere, RageOn had no

2  choice but to retain separate counsel and bring this emergency application.

3  Krilivsky Decl., ¶¶ 19-20, Exhs. "L" and "M".

4      This seizure of money threatens RageOn's very existence.  If the Default

5  Judgment and Writ of Exeuction stand, it will be a crushing blow to RageOn's small

6  business and would affect everybody within it.  Indeed, RageOn has already

7  suffered irreparable harm, which harm is escalating, unless this application or

8  motion is granted.  The loss of RageOn's money has significantly affected RageO's

9  ability to cover its expenses, including its payroll obligations.  If this application is

10 denied, RageOn will be driven out of business almost immediately, not to mention

11 the negative effect on its employees of losing their pay (including earned pay)

12 during the worst economic crisis in years.  If RageOn could even financially survive

13 this ordeal, the loss of employees and vendors, not to mention the effect to its credit

14 and goodwill, is irreparable.  Krilivsky Decl., ¶ 21.

15     Despite the Default Judgment of $1,125,600, Atari's claims relate to only a

16 couple hundred dollars of sales.  RageOn sold only $189.10 of merchandise—

17 created by third parties—that allegedly implicates Atari's intellectual property

18 rights.  Krilivsky Decl., ¶¶ 18, 26-28.  Moreover, a large portion of the sales of the

19 accused products were initiated by a single source—who RageOn believes was/is

20 connected to Atari and this litigation.  Krilivsky Decl., ¶¶ 26-27, Exh. "P".  An

21 award of $1,125,600 is unwarranted under the circumstances.

22 **III.  LEGAL ARGUMENT**

23     A party may seek relief from a default judgment under Rules 55(c) and 60(b).

24 A party may seek relief based on mistake, inadvertence, surprise, or excusable

25 neglect.  Fed. R. Civ. P. 60(b)(1).  A party may also seek relief from a judgment

26 based on "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  Rule

27 60(b) "is remedial in nature and thus must be liberally applied."  *Cmty. Dental*

28 *Servs. v. Tani*, 282 F.3d 1164, 1169 (9th Cir. 2002).

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4590561.4

5

1    Courts consider the same factors when deciding whether to vacate a default

2    and a default judgment.  Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial,

3    § 6:143.  The factors are: (1) whether the defendant engaged in culpable conduct that

4    led to the default; (2) whether the defendant has a meritorious defense; and (3)

5    whether setting aside the default would prejudice the plaintiff.  *United States v.*

6    *Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).

7    Courts are also guided by the policy that a default judgment "is a drastic step

8    appropriate only in extreme circumstances; a case should, whenever possible, be

9    decided on the merits."  *Id*.

10    **A.**    **RageOn Did Not Engage in Culpable Behavior**

11    The Default Judgment and Default must be set aside under Rule 60(b)(6) for

12    "any other reason that justifies relief."  A party did not engage in culpable behavior,

13    and the default must be set aside, if its counsel was grossly negligent.  *See Cmty.*

14    *Dental Servs. v. Tani*, 282 F.3d 1164, 1169 (9th Cir. 2002); *see also Carter v. Albert*

15    *Einstein Med. Ctr.*, 804 F.2d 805, 806 (3d Cir. 1986).  A party demonstrates gross

16    negligence where, as here, its counsel "virtually abandoned" the party.  *Cmty.*

17    *Dental Servs.*, 282 F.3d at 1170.

18    Counsel's behavior here was similar to, and indeed more egregious than, the

19    counsel's behavior in *Community Dental Services*.  In that case, the counsel failed to

20    answer the complaint, failed to file a stipulation of time to answer.  282 F.3d at

21    1170–71. The counsel, however, represented to the client that the case was going

22    well, and it was not until the client received the order granting default judgment that

23    the client became aware of the status of the case.  *Id*. at 1167.  The Ninth Circuit

24    reversed the district court and vacated the default and default judgment because

25    "conduct on the part of a client's alleged representative that results in the client's

26    receiving practically no representation at all clearly constitutes gross negligence"

27    that requires vacatur under Rule 60(b).  *Id*. at 1171.

28    In this case, as discussed above, Counsel failed to answer the Complaint and

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4590561.4

6

appears to have failed to obtain extensions of time.  Among other things, Counsel led RageOn to believe the matter was being handled appropriately.  Counsel refused to turn the case file over to RageOn.  It was not until one week before filing this Application that RageOn learned about the Default Judgment—by discovering that its bank account had been drained.  Krilivsky Decl., ¶¶ 4-18.

Indeed, the Default Judgment and Default must be set aside under Rule 60(b)(1) for "mistake, inadvertence, surprise, or excusable neglect."  "[A]t least for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993).  As noted above, RageOn intended to comply with all requirements for litigating this case, and it was only through Counsel's negligence that RageOn failed to comply with filing deadlines.

RageOn did not engage in culpable behavior by failing to answer the Complaint.  A defendant's behavior is culpable if the defendant "intentionally" failed to answer.  *Mesle*, 615 F.3d at 1092.  "[I]n this context, the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'"  *Id.* (quoting *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001), as amended on denial of reh'g and reh'g en banc (May 9, 2001)).  To the contrary, RageOn contacted Counsel many times to inquire about the status of the litigation, and even contacted Atari's counsel to try to make sure RageOn was properly defending itself.

## B.   RageOn Has Meritorious Defenses

RageOn has meritorious defenses in this action.  "[T]he burden on a party seeking to vacate a default judgment is not extraordinarily heavy.  All that is

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

DEFENDANT RAGEON, INC.'S EMERGENCY *EX PARTE* APPLICATION FOR RELIEF FROM DEFAULT AND DEFAULT JUDGMENT AND QUASHING WRIT OF EXECUTION

1   necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts

2   that, if true, would constitute a defense . . . ." *Mesle*, 615 F.3d at 1094.  Indeed, for

3   purposes of supporting a set aside, the applicable standard is not a likelihood of

4   success. *United States v. Aguilar*, 782 F.3d 1101, 1107 (9th Cir. 2015).

5       Atari brought claims against RageOn for alleged trademark, dilution, and

6   copyright violations. *See* Complaint, Doc. No. 1.  First, Atari cannot prevail on its

7   trademark infringement claims.  In the seminal case *Tiffany (NJ) Inc. v. eBay Inc.*,

8   600 F.3d 93, 107 (2d Cir. 2010), the court concluded that "[f]or contributory

9   trademark infringement liability to lie, [an internet selling] service provider must

10  have more than a general knowledge or reason to know that its service is being used

11  to sell counterfeit goods. Some contemporary knowledge of which particular listings

12  are infringing or will infringe in the future is necessary."  Likewise, in *Ohio State

13  University v. Redbubble, Inc.*, 369 F. Supp. 3d 840 (SD Ohio 2019), the court found

14  that, despite the fact that redbubble facilitated the sales and contracted the printing

15  and shipping of the alleged infringing merchandise to third-party partners and

16  despite the fact that the items were delivered in Redbubble-branded packaging,

17  Redbubble couldn't be sued because it technically didn't make or even sell the

18  infringing products.

19      Likewise, here, RageOn was unaware that products allegedly infringing

20  Atari's rights were offered for sale on its platform.  The designs appearing on the

21  accused goods were created and manufactured/supplied by third parties and sold

22  through RageOn's website with no input or approval from RageOn.  Krilivsky Decl.

23  ¶ 22.  The order/manufacture process is largely automated, whereby the user selects

24  the artwork with RageOn acting as passive, automated broker transparently pairing

25  up users with manufacturers.  *Id*.  RageOn exercises no control over the content's

26  design.  *Id*.

27      At the same time, RageOn strongly prohibits intellectual property violations

28  and attempts to keep infringing products off its platform, but RageOn cannot review

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4590561.4

8

1   every product offered for sale.  In light of this, before the user may upload any

2   content to RageOn's website, the user must first agree to RageOn's Terms of

3   Service, which includes the following representation and warranty: "By submitting

4   any material on the Service, you warrant that you have the right to use the

5   trademarks, processes, and other materials you use with the Service. You warrant

6   that your posted material does not infringe any third party copyrights, trademarks, or

7   patents. You warrant your posted material is your own."  Krilivsky Decl. ¶¶ 22-23,

8   Exh. "N".  The user must again warrant and represent that they own the rights to the

9   content they upload to RageOn's site.  *Id*.  RageOn has also implemented a robust

10  infringement reporting procedure whereby it vigorously enforces third-party reports

11  of infringing content on the RageOn the platform.  ."  Krilivsky Decl. ¶¶ 22-23, 29,

12  Exh. "Q".

13        Atari, however, never contacted RageOn requesting that it remove the

14  accused goods before bringing suit.  Krilivsky Decl., ¶ 24.  In addition, RageOn

15  notes that a number of the accused products — e.g., "bong" rather than "pong",

16  Compl., Exh. 3 at 49.— constitute parodies for which there can be no liability for

17  trademark infringement or dilution, i.e., when there is no likelihood of confusion

18  because the defendant necessarily used the plaintiff's mark to identify it in a joke.

19  "A 'parody' is defined as a simple form of entertainment conveyed by juxtaposing

20  the irreverent representation of the trademark with the idealized image created by

21  the mark's owner." *People for the Ethical Treatment of Animals v. Doughney*, 263

22  F.3d 359, 366 (4th Cir. 2001) (use of domain name peta.org was not parody even if

23  resolving website was "People Eating Tasty Animals," because parody message was

24  not simultaneous with the confusing use of the trademark PETA); *Louis Vuitton*

25  *Malletier, S.A. v. Hot Diggity Dog, LLC*, 507 F.3d 252, 260 (4th Cir. 2007) ("Chewy

26  Vuitton" dog toys were not infringing); *Louis Vuitton Malletier v.  My Other Bag*,

27  156 F. Supp. 425 (S.D.N.Y. 2016), *aff'd*. 674 Fed.Appx. 16 (2d Cir. 2016)

28  (inexpensive canvas tote displaying famous brand symbols held the parody); *Hot*

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4590561.4

9

DEFENDANT RAGEON, INC.'S EMERGENCY *EX PARTE* APPLICATION FOR RELIEF FROM DEFAULT AND
DEFAULT JUDGMENT AND QUASHING WRIT OF EXECUTION

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  *Diggity Dog, LLC*, *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir.

2  2002) (use of "Barbie" in the song "Barbie Girl" by the band Aqua was parody).

3  Moreover, Atari's allegation that "RageOn used the word mark 'Atari' as a keyword

4  that drove users to the RageOn site" is false.  The use of the word "Atari" on the

5  RageOn site was auto-generated by virtue of the product listings.  Krilivsky Decl. ¶

6  22.  No specific effort was made to associate RageOn with Atari.  *Id.*

7  　　　Second, Atari cannot prevail on its copyright claims.  The Digital Millennium

8  Copyright Act ("DMCA") establishes a safe harbor for information residing on

9  systems or networks at the direction of users.  *Mavrix Photographs, LLC v.*

10  *Livejournal, Inc.*, 873 F.3d 1045, 1052 (9th Cir. 2017) (citing 17 U.S.C. § 512(a)–

11  (d)).  That is, the DMCA creates a safe harbor for online service providers who, like

12  RageOn, are largely passive in the posting of alleged infringing content against

13  copyright infringement liability– essentially immunizing them from liability –

14  provided they meet specific requirements, including, adopting and reasonably

15  implementing a policy of terminating in appropriate circumstances the accounts of

16  users who are repeat offenders and taking reasonable measures to remove alleged

17  infringing content.  As noted, above, RageOn has implemented these and other IP

18  protection procedures.  Regardless, Atari utterly failed to comply with the Safe

19  Harbor provision of the DMCA, as it had never provided RageOn with notice of the

20  alleged infringements and the opportunity to take appropriate action.  Krilivsky

21  Decl. ¶ 24.

22  　　　Third, like in the trademark context, RageOn also has parody/fair use

23  defenses to Atari's copyright infringement claim with regard to many of the alleged

24  infringing designs.  *See, e.g., Brownmark Films, LLC v. Comedy Partners*, 800 F.

25  Supp. 2d 991 (E.D. Wis. 2011), aff'd, 682 F.3d 687 (7th Cir. 2012) (fair use of

26  portion of copyrighted music video "What What (In the Butt)" in a South Park

27  cartoon: as use was transformative, designed to lampoon the viral video craze and

28  poke fun at the original, use was just enough to conjure up original, and there was

4590561.4　　　　　　　　　　　　　　　10

1  little risk of usurping market demand for the viral video); *see also Campbell v.*

2  *Acuff-Rose Music, Inc.*, 510 U.S. 560 (1994) (parody of Roy Orbison's "Pretty

3  Woman" in a 2 Live Crew rap song was fair use)).

4     Fourth, even if Atari could prevail, it cannot obtain an award of $1,125,600.

5  In fact, under the Lanham Act, it is questionable whether Atari can obtain any

6  damages, let alone  an enhanced damages theory such as  counterfeiting.  For

7  example, under 15 U.S.C. § 1114(2)(A) 1114(2)(A), "[w]here an infringer or

8  violator is engaged solely in the business of printing the mark or violating matter for

9  others and establishes that he or she was an innocent infringer or innocent violator,

10  the owner of the right infringed or person bringing the action under section 1125(a)

11  of this title shall be entitled as against such infringer or violator only to an injunction

12  against future printing."  Whether or not RageOn qualifies under this provision has

13  yet to be determined, but it calls into question whether Atari may obtain a monetary

14  award against RageOn under the Lanham Act – let alone the windfall award it

15  obtained by default.

16     Fifth, to obtain substantial statutory damages under the Lanham Act, a

17  showing of willfulness is required.  15 U.S.C. § 1117(c)(2).  A similar showing is

18  required under the Copyright Act.  17 U.S.C. § 504(c)(2) (The award for willful

19  infringement under the Copyright Act consist of the following: "in a case

20  where the copyright owner sustains the burden of proving, and the court finds,

21  that infringement was committed *willfully*, the court in its discretion may

22  increase the award of statutory damages to a sum of *not more than* $150,000."

23  (emphasis added).)

24     Atari cannot make such showings here, either the Lanham Act or the

25  Copyright Act, as RageOn was not even aware of the allegedly infringing products.

26  Regardless, such damages would be grossly disproportionate to the alleged harm, as

27  RageOn realized a total of $338.90 in gross revenue for the accused goods, $149.80

28  of which represents purchases made by Atari's counsel's office.  Krilivsky Decl., ¶¶

4590561.4

11

DEFENDANT RAGEON, INC.'S EMERGENCY *EX PARTE* APPLICATION FOR RELIEF FROM DEFAULT AND
DEFAULT JUDGMENT AND QUASHING WRIT OF EXECUTION

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1   26, 28.  Granting Atari with the recovery it has sought constitutes an impermissible

2   windfall.

3       **C.**    **<u>Setting Aside Default Will Not Prejudice Atari</u>**

4       Setting aside the default will not prejudice Atari.  A plaintiff is only

5   prejudiced if its ability to pursue its claim is hindered.  *TCI Grp. Life Ins. Plan v.*

6   *Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (superseded on other grounds).

7   Prejudice requires a loss of evidence, increased difficulties of discovery, or greater

8   opportunity for fraud or collusion.  *Id.*

9       Here, Atari has not been prejudiced by a delay of approximately three months

10  from the Default Judgment (or five months from the Default).  Indeed, the courts

11  were closed for a portion of that time due to the pandemic.  Atari cannot credibly

12  claim this short delay caused a loss of evidence or created other difficulties.  Rather,

13  Atari will suffer only the loss of an astronomical judgment that disregards RageOn's

14  defenses to liability, not to mention appropriate damages.

15      **D.**    **<u>This Application Is Timely</u>**

16      A party may move to set aside a default judgment under Rule 60(b) for "any

17  other reason that justifies relief" at any reasonable time, and may move under Rule

18  60(b)(1) for mistake, inadvertence, surprise, or excusable neglect within one year.

19  Here, the Court entered the Default Judgment on April 15, 2020, less than three

20  months ago.  Moreover, RageOn first learned of the Default Judgment and Writ of

21  Execution one week ago, on June 29, 2020, Krilivsky Decl., ¶ 17, and retained

22  counsel on the evening of July 3, 2020, Declaration of Arash Beral ("Beral Decl."),

23  ¶ 3.  Such quick action is more than reasonable, even if RageOn were not dealing

24  with the COVID-19 disruptions and hampered by trying to obtain counsel with an

25  empty bank account.

26  / / /

27  / / /

28  / / /

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4590561.4

12

### E.   The Writ of Execution is Invalid if the Court Vacates the Default Judgment

Where a court has vacated a default judgment, the court should recall and quash a related writ of execution.  *See DH Holdings, LLC v. Meridian Link, Inc.*, No. CV 09-9117 ABC, 2010 WL 11597616, at *5 (C.D. Cal. Apr. 9, 2010) ("The Court GRANTS Defendant's motion and VACATES the default judgment pursuant to Rule 60(b). Because no valid judgment remains registered in this District, the Court QUASHES the levy and writ of execution . . . ."); *U.S.-China Assets Mgmt. USA LLC v. Amico Int'l Corp.*, No. CV 09-01596 ABC, 2009 WL 10700142, at *4 (C.D. Cal. Nov. 19, 2009).  Because the Default and Default Judgment must be vacated in this case, the court must recall and quash the Writ of Execution.

### F.   Temporary Restraining Order

If the Court is not prepared to decide RageOn's request to set aside and vacate the Default Judgment and Default on an expedited basis, RageOn asks the Court to issue a temporary restraining order to prohibit Atari from taking enforcement actions until the Court holds a hearing on the request.

The standard for a temporary restraining order and a preliminary injunction are the same.  Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial, § 13:43.  The moving party must show (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm without preliminary relief, (3) the balance of equities is in favor of the moving party; and (2) the public interest favors preliminary relief.  *See Winter v. Natural Resources Defense Council, Inc.*, 555 US 7, 20 (2008).

RageOn showed above that it is likely to prevail on this Application to set aside the Default Judgment and Default under Rule 60(b)(1) and (3).  RageOn showed that it is likely to suffer the irreparable harm of being driven out of business if the Court does not prohibit Atari from collecting under the Writ of Execution because the U.S. Marshal seized ***all*** of RageOn's money, rendering it unable to pay

13

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1 employee wages already earned, unable to pay vendors and suppliers, unable to

2 continue employing workers, and unable to purchase new merchandise to resell.

3     The balance of equities favors RageOn because RageOn has been unable to

4 present its meritorious defenses in this action, despite its voluminous attempts to

5 ensure Counsel was adequately representing RageOn.  Moreover, RageOn is subject

6 to a Default Judgment disproportionate to the damages in this case even if RageOn

7 could somehow be liable.

8     Finally, the public interest favors preliminary relief.  RageOn sells face masks

9 to the public and should be allowed to continue during this litigation, rather than

10 being driven out of business by a Default Judgment.  Short of issuing a TRO,

11 RageOn requests that the Court quash the Writ of Execution on an expedited basis

12 while pending a noticed hearing on the foregoing matters.

13 **IV.**   **CALIFORNIA CIVILITY AND PROFESSIONALISM GUIDELINES**
**EXPRESSLY ADVISE AGAINST PLAINTIFF'S COUNSEL'S TACTICS**

14

15     Section 15 of the State Bar of California's Civility and Professionalism

16 Guidelines provide: "An attorney should not take the default of an opposing party

17 known to be represented by counsel without giving the party advance warning.  For

18 example an attorney should not race opposing counsel to the courthouse to

19 knowingly enter a default before a responsive pleading can be filed. This guideline

20 is intended to apply only to taking a default when there is a failure to timely respond

21 to complaints, cross-complaints, and amended pleadings."

22     The Central District's Guidelines are similar: "We will not cause any default

23 or dismissal to be entered without first notifying opposing counsel, when we know

24 his or her identity."  Despite an abundance of communications with Atari's counsel,

25 not once did Atari's counsel inform RageOn or its counsel that it had caused a

26 default to be entered against RageOn or that it was in the process of applying for or

27 obtaining a default judgment.  In fact, Atari's counsel's silence caused RageOn to

28 believe that this matter was under control by the lawyers, or that it had been

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4590561.4

14

1 dismissed altogether.

**V.  RAGEON PROVIDED NOTICE UNDER LOCAL RUE 7-19**

Under Local Rule 7-19, the name, address, telephone number and email address of counsel for the opposing party are:

BROWNE GEORGE ROSS LLP

Keith J. Wesley

kwesley@bgrfirm.com

2121 Avenue of the Stars, Suite 2800, Los Angeles, California 90067

Telephone: (310) 274-7100

Facsimile: (310) 275-5697

On July 4, 2020, counsel for RageOn contacted counsel for Atari by email and by voicemail. RageOn's counsel informed Atari's counsel of the substance of this ex parte application.  RageOn's counsel further notified Atari's counsel that opposition papers, if any, are due no later than later than 48 hours (or two court days) after service under the Court's standing order rule 7, and that Atari must advise the courtroom deputy clerk as soon as possible whether it opposing party intends to oppose the ex parte application under the same rule.  Beral Decl., ¶ 4.

**VI.  CONCLUSION**

For the foregoing reasons, RageOn asks this Court for (1) an order for relief from the Default Judgment entered on April 15, 2020; (2) an order setting aside and vacating the Default entered on January 30, 2020; (3) an order recalling and quashing the Writ of Execution entered on June 24, 2020; or (4) in the alternative, for a temporary restraining order prohibiting Atari from taking any enforcement action under the Writ of Execution or otherwise enforcing the Default Judgment until after the Court conducts a hearing on a noticed motion for relief from default and default judgment and an order recalling and quashing the writ of execution.

/ / /

/ / /

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4590561.4

15

1   DATED: July 6, 2020            FREEMAN, FREEMAN & SMILEY, LLP

2

3                                  By:   _____/s/ Arash Beral_____

4                                        ARASH BERAL
                                         JEFFREY M. JENSEN
5                                        Attorneys for Defendant
                                         RAGEON, INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4590561.4
16