UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATARI INTERACTIVE, INC.,<br>    Plaintiff,<br><br>            v.<br><br>RAGEON, INC.,<br>    Defendant. | CV 19-10806 DSF (MAAx)<br><br>Order GRANTING in Part and DENYING in Part Defendant's *Ex Parte* Application for an Order for Relief from Default Judgment, Setting Aside Entry of Default, and Recalling/Quashing Writ of Execution; or, in the Alternative, for Temporary Restraining Order Pending a Hearing on Noticed Motion (Dkt. 26) |

Defendant RageOn, Inc. applies *ex parte* for an order for relief from default judgment, setting aside entry of default, and recalling/quashing the writ of execution, or in the alternative for a temporary restraining order prohibiting Plaintiff from taking enforcement actions pending a hearing on a noticed motion. Dkt. 26 (Mot.). Plaintiff Atari Interactive, Inc. opposes. Dkt. 28 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

Plaintiff is a well-known video game brand responsible for games such as Pong, Breakout, and Asteroids. Dkt. 1 (Compl.) ¶ 6. Plaintiff has registered trademarks for its name and logo and the "Pong" name for use on posters, stickers, and clothing. Id. ¶ 13.a. Plaintiff also has

CC: USM

registered copyrights for its video games, including the related visual elements. Id. ¶ 13.b. Plaintiff claims common law trademark and trade dress protection in the Atari name and logo, the names and graphics of some of its top games, and the "overall look and feel" of its original game console and joystick. Id. ¶ 14.

Defendant "is an online seller of merchandise, primarily clothing and coffee mugs" that "allows users to create their own designs and sell them on merchandise through [Defendant's] website." Dkt. 26-1 (Krilivsky Decl.) ¶ 2. Plaintiff alleges that after users upload their designs to Defendant's website, Defendant displays the design on a variety of apparel that it sells on its website, and when sold, hand makes and prints the items containing the designs, ships them, and processes the payment. Compl. ¶¶ 15-16; see also Dkts. 28-3 (Suppl. Wesley Decl. Ex. B), 28-4 (Suppl. Wesley Decl. Ex. C), 28-5 (Suppl. Wesley Decl. Ex. D). Defendant disputes this characterization, claiming that after products are purchased, they are "sent through our automated portal to an off-site third party manufacturer who then manufactures the goods." Krilivsky Decl. ¶ 22. Defendant further explains that it "act[s] as [a] passive, automated broker transparently pairing up users with manufacturers." Id.

Plaintiff alleges that Defendant sells, distributes, and profits from "large quantities of counterfeit Atari products" including "products [that] incorporate exact replicas of the registered ATARI trademark (name and logo)," "easily identifiable depictions of the Atari 2600 console and joystick with the distinctive red button," and "copyrights owned by Atari." Compl. ¶¶ 17-18. Defendant contends that "there were only $338.90 in total sales of the alleged/accused products, $149.80 of which" purportedly came from a paralegal at Plaintiff's counsel's law firm. Krilivsky Decl. ¶¶ 26-28.

Defendant was served with the summons and complaint on December 27, 2019 through its registered agent. Dkt. 11 (Proof of Service); see also Krilivsky Decl. ¶ 6 (Defendant "received email notice from our agent for service of process with a link to the documents that were served"). Between December 30 and January 9, Defendant

emailed his attorney, Betty Tufariello, a number of times asking for an update, but Tufariello did not respond. Krilivsky Decl. ¶ 6 & Ex. C. On January 16, 2020, Tufariello finally responded stating that "Atari and I are in discussion. I have 21 days. And he is aware [o]f my traveling" and told Defendant that she was going to file a stipulation to extend Defendant's deadline to respond to Plaintiff's complaint. Id. ¶ 7 & Ex. D. Tufariello did not file any stipulation and did not respond to the Complaint by the deadline.

On January 23, 2020, Defendant's CEO, Mike Krilivsky, spoke with Plaintiff's counsel over the phone and via email; Plaintiff's counsel told Krilivsky that Plaintiff was "about to proceed with default judgement against RageOn because [its] attorney did not file anything" and Krilivsky stated that Defendant was being represented by Tufariello who purportedly received a two-week extension to respond to the Complaint from someone named Daniel Sahad.[1] Id. ¶ 8 & Ex. E.[2] After confirming she represented Defendant, Tufariello told Plaintiff's counsel that she intended to file an Answer no later than January 30, 2020, in compliance with the alleged two-week extension. Dkt. 14-4 (Wesley Decl. Ex. C) at 2. No answer was ever filed and Plaintiff's counsel received no further communications from Tufariello. Plaintiff applied for entry of default on January 29, 2020. Dkt. 12 (Default Appl.). The clerk properly entered default the next day. Dkt. 13 (Default).

---

[1] No lawyer with that name works at Plaintiff's counsel's law firm, and there does not appear to be a member of the California bar with that name. See Opp'n at 4.

[2] Defendant contends that "[o]nce Mr. Wesley was reminded that some extension had been worked out among counsel, he confirmed to Mr. Krilivsky that all would be fine." Mot. at 4 (citing Krilivsky Decl. ¶¶ 8, 19 & Ex. E). This contention blatantly contradicts the record. Far from agreeing that "some extension had been worked out," Plaintiff's counsel was understandably concerned that the purported extension was granted by a person who did not work for Plaintiff's counsel's firm and neither Tufariello nor Krilivsky could explain who he was. See Wesley Decl. Ex. C.

On February 3, 2020, Krilivsky again emailed Plaintiff's counsel requesting to have a phone call, but Plaintiff's counsel did not respond (presumably due to ethical duties not to communicate with represented opposing parties). Krilivsky Decl. ¶ 10 & Ex. G.³ Then Krilivsky contacted an "attorney friend" who told Krilivsky that default had been entered. Id. ¶ 11.⁴ Krilivsky waited until February 10, 2020 to follow up with Tufariello. Id. ¶ 11 & Ex. H. Apparently, that same day Tufariello filed a motion to withdraw as counsel for Defendant in another matter citing failure to pay, "irreconcilable differences regarding litigation strategy," and "certain conflicts of interest that have recently come up in the present matter, as well as in two other matters, in which I also represent Defendant," including one matter that "named Intellectulaw and me personally as Defendant's co-defendants, as a result of my representation of Defendant in that matter." Dkt. 28-10 (RJN Ex. D) at 5.⁵ Nevertheless, on February 12, 2020, Tufariello texted Defendant "that the only pressing deadlines involved non-Atari matters and that 'the deadlines imposed by Court are being met.'" Krilivsky Decl. ¶ 13 & Ex. J. This was not true. Plaintiff moved for default judgment on February 24, 2020. Dkt. 14. The motion was served on Defendant's registered agent for service of process and Tufariello. Dkt. 14-1 (Wesley Decl.) ¶ 2(e); see also Dkt.

---

³ Krilivsky tried to contact Plaintiff's counsel a second time on February 11, 2020, but (understandably) received no response. Krilivsky Decl. ¶¶ 12-13 & Ex. I. Defendant's claim that "[c]ommunications between RageOn and Counsel and RageOn and Mr. Wesley continued for weeks," Mot. at 4, is entirely misleading.

⁴ The Court is skeptical of Krilivsky's contention that he did not know what a "default" was due to the fact that a number of defaults have been entered against Defendant. Plaintiff cites three recent federal district court cases where default was entered against Defendant, including one case where Tufariello claims not to have responded to the complaint because she believed there had been a settlement. Opp'n at 6-7.

⁵ Plaintiff's request for judicial notice, Dkt. 28-6 (RJN), of court filings made by Defendant and Defendant's counsel is GRANTED. Fed. R. Evid. 201(b).

28-2 (Suppl. Wesley Decl. Ex. A).  Krilivsky claims he was not served with these papers.  Krilivsky Decl. ¶ 13.

On March 13, 2020, Krilivsky had a discussion with Tufariello about all of Defendant's matters.  Id. ¶ 14.  Tufariello did not inform Defendant about the motion for default judgement or that she had never answered the complaint.  Id.  Krilivsky "grew frustrated with her at some point" and "asked her . . . to turn over all of her files to us, but she refused."  Id.  Nevertheless, "she continued to provide us legal advice on other matters."  Id.  Krilivsky received no additional updates about the case, which he assumed was due to the COVID-19 pandemic and related court closures.  Id. ¶ 15.[6]  The Court granted Plaintiff's application for default judgment and entered judgment on April 15, 2020.  Dkts. 16, 18, 19.  Plaintiff subsequently identified Defendant's bank account and applied for a writ of execution and order appointing a process server to execute on the writ.  See Dkt. 28-1 (Suppl. Wesley Decl.) ¶¶ 3-4; see also Dkts. 22, 23.  On June 24, 2020, the writ and order were issued.  Dkts. 24, 25.  Plaintiff's levy on the identified bank account was successful.  Suppl. Wesley Decl. ¶ 4.  On June 29, 2020, Krilivsky learned that approximately $882,000 in Defendant's Bank of America account had been seized.  Krilivsky Decl. ¶ 17.  After failed attempts to resolve the issue with Plaintiff's counsel, Defendant hired counsel and filed this application.  Id. ¶¶ 19-20.

## II. DISCUSSION

"Properly designed ex parte motion papers . . . contain two distinct motions or parts.  The first part should address only why the regular noticed motion procedures must be bypassed.  The second part consists of papers identical to those that would be filed to initiate a regular noticed motion (except that they are denominated as a 'proposed' motion and they show no hearing date.)."  Mission Power Eng'g Co. v. Cont'l Cas. Co., 883 F. Supp. 488, 492 (C.D. Cal. 1995).  "The purpose of the first part of the ex parte motion papers . . . must

---

[6] Krilivsky did not contact Tufariello again until June 21, 2020 and July 1, 2020; he received no response.  Krilivsky Decl. ¶ 16 & Ex. K.

show why the moving party should be allowed to go to the head of the line in front of all other litigants and receive special treatment." Id. "[T]he evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures" and "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." Id.

### A.  Irreparable Prejudice

Defendant contends that it "has already suffered irreparable harm, which harm is escalating" because "[t]he loss of [its] money has significantly affected [its] ability to cover its expenses, including its payroll obligations." Mot. at 5 (citing Krilivsky Decl. ¶ 21). Later, Defendant states that "the U.S. Marshal seized *all* of RageOn's money, rendering it unable to pay employee wages already earned, unable to pay vendors and suppliers, unable to continue employing workers, and unable to purchase new merchandise to resell." Id. at 14. The Court agrees with Plaintiff that Defendant has "presented no demonstrative evidence showing that it does not have access to funds to operate its business pending the hearing of a regularly noticed motion, i.e., no details concerning its access to funds from sources other than the levied account and no details concerning the amount of its liabilities." Opp'n at 20. While the Court finds that Defendant has not currently made a sufficient showing of irreparable prejudice, the Court will consider an *ex parte* application from Defendant that adequately makes such a showing. Until that time, the funds will remain in the custody of the U.S. Marshal, unless other arrangement are agreed to by the parties.

### B.  Fault of Defendant

Plaintiff contends it was Defendant's "culpable conduct [that] caused any urgency." Opp'n at 9. Specifically, it is undisputed that Defendant has been aware of this lawsuit since December but has never responded to the complaint or filed any other pleading until now. Id. Although Defendant was made aware of Plaintiff's intention to

6

request default, Krilivsky Decl. Ex. E, and that default had been entered, Krilivsky Decl. ¶ 11, Defendant still did nothing. Defendant contends, however, that Tufariello explicitly represented that the case was proceeding properly and that she was performing her responsibilities. See, e.g., Krilivsky Decl. Ex. D (January 16, 2020 text message from Tufariello that she was "in discussions" with Plaintiff and had "21 days."); id. Ex. F (January 24, 2020 text message from Tufariello that "I am not done yet. But I did respond to Keith in the Atari case"); id. Ex. J (February 12, 2020 text message from Tufariello that "[t]he only two pressing deadlines were [redacted]. . . . The deadlines imposed by Court are being met.").

Plaintiff casts doubt on Defendant's continued reliance on Tufariello beyond early February, noting that "a conflict arose between RageOn and Ms. Tufariello, resulting in her formal withdraw[al] as counsel for RageOn on February 10, 2020, brought about in large part by the failure of an answer to be filed in another infringement case." Opp'n at 10. Plaintiff further believes that Defendant's "assertion that it reasonably relied on Ms. Tufariello throughout this year is another lie" because Defendant "asserted in the [other] case that it began interviewing replacement attorneys" in February 2020 and "[Defendant] provides no plausible explanation why it failed to retain new counsel to represent it in this case after its separation with Ms. Tufariello, or otherwise defend this case." Id. at 11, 13. Therefore, Plaintiff contends that any purported reliance on Tufariello was not reasonable or justified. Id. at 11; see also id. at 14 "RageOn simply cannot claim there was intentional deception by its attorney, and justifiable reliance thereon, where it had actual knowledge of the relevant facts approximately five months ago.").

Given the substantial factual disputes and credibility concerns, the Court does not have sufficient information to determine whether Defendant is at fault at this time.[7] Therefore, the Court believes that

---

[7] The other factors relevant to the merits of Defendant's motion (existence of potentially meritorious defenses and prejudice to Plaintiff) appear to weigh in favor of setting aside default. The potential defenses rely on resolution of

this matter should be heard on a noticed motion, with sufficient time for Plaintiff to conduct the deposition of Krilivsky and Tufariello.

### III. CONCLUSION

Defendant's *ex parte* motion for relief from default judgment, to set aside entry of default, and recalling/quashing the writ of execution is DENIED. Defendant's request to prohibit Plaintiff from taking any further steps to enforce the default judgment or to enforce the Writ of Execution pending decision on a noticed motion is GRANTED.[8] The levied funds shall remain in the custody of the U.S. Marshal, unless the parties mutually agree to another acceptable arrangement, pending a decision on the noticed motion or other Court Order.

Plaintiff may file a supplemental opposition by August 7, 2020 and Defendant may file a reply by August 21, 2020, at which time the matter will be taken under submission.

IT IS SO ORDERED.

Date: July 10, 2020

Dale S. Fischer
United States District Judge

---

disputed factual issues, including Defendant's involvement in the creation and manufacturing of the infringing products, Defendant's knowledge and awareness of the alleged infringement, and the magnitude of the infringement. And Plaintiff's purported prejudice, that Defendant will abscond with the levied funds, has nothing to do with setting aside the judgment. Even so, Plaintiff has not made a sufficient showing that Defendant will ultimately be unable to satisfy a judgment.

[8] Plaintiff appears to agree to this request. See Opp'n at 21 ("Should the Court wish to hear a regularly-noticed motion on RageOn's request to vacate the judgment against it, Atari respectfully requests that the Court hold the levied funds in escrow pending its ruling.").