ARASH BERAL (BAR NO. 245219)
arash.beral@ffslaw.com
JEFFREY M. JENSEN (BAR NO. 262710)
jeffrey.jensen@ffslaw.com
FREEMAN, FREEMAN & SMILEY, LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone:  (310) 255-6100
Facsimile:  (310) 255-6200

Attorneys for Defendant
RAGEON, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| ATARI INTERACTIVE, INC., | Case No. 2:19-cv-10806-DSF-MAA |
|---|---|
| Plaintiff, | **DEFENDANT RAGEON, INC.'S SUPPLEMENTAL BRIEF (REPLY) IN SUPPORT OF ITS APPLICATION FOR AN ORDER FOR RELIEF FROM DEFAULT JUDGMENT, SETTING ASIDE ENTRY OF DEFAULT, AND RECALLING/QUASHING WRIT OF EXECUTION** |
| vs. | |
| RAGEON, INC., | |
| Defendant. | |
| | *[Filed concurrently with Supplemental Declarations of Michael Krilivsky and Arash Beral and Application for Leave to File Under Seal]* |
| | Judge:  Hon. Dale S. Fischer |

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4630297.2 4630297.2

1

RAGEON, INC.'S SUPPLEMENTAL BRIEF

1
2

# **TABLE OF CONTENTS**

3   I.     INTRODUCTION ...................................................................................... 1

4   II.    LEGAL ARGUMENT ............................................................................... 4

5         A.    Atari Improperly Defaults RageOn Before RageOn's Answer
6             Deadline Expired; Atari's Counsel Engaged in Unethical
             Conduct. ............................................................................................ 4

7         B.    Atari Failed to Serve RageOn with its Default Application, Nor
8             did it File a Proof of Service with the Court. .................................... 7

9         C.    Atari Failed to Serve the Legally Required Notice of the
             Application for Default Judgment on RageOn. .................................. 7

10       D.    Atari Did Not Meet and Confer Over its Default Judgment
11            Application. ..................................................................................... 10

12       E.    Even if Default and Default Judgment were Properly Entered,
             RageOn Did Not Engage in Culpable Conduct. ................................ 13

13       F.    Atari's Contrived Attempt at Vilifying RageOn is a Subterfuge. ........ 13

14       G.    The Default Judgment is Grossly Excessive and Bears No
             Plausible Relationship with the Actual Alleged Damages. ................. 18

15   III.   CONCLUSION ....................................................................................... 20

16
17
18
19
20
21
22
23
24
25
26
27
28

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4630297.2 4630297.2

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Allmerica Fin. Life Ins. & Annuity Co. v. Llewellyn*, 139 F.3d 664 (9th Cir. 1997). 12

*Casey v. Albertson's Inc.*, 362 F.3d 1254 (9th Cir. 2004)......................................... 12

*Community Dental Servs. v. Tani*, 282 F.3d 1164 (9th Cir. 2002)............................ 11

*DDCIP Techs., Inc. v. 4INFO TV, LLC*, No. 07CV0400 DMS (JMA), 2007 WL 9777931, at *2 (S.D. Cal. Oct. 12, 2007)............................................................ 9

*Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685 (9th Cir. 1988)............................................................................................................ 12

*Felix Haro v. St. Paul*, *supra*, 2009 WL 1770156, at *4 (E.D. Cal. June 23, 2009).. 8, 10

*First Home Bank v. T.R.A.V. Meat Corp.*, No. CV 17-7670-MWF(PLAX), 2018 WL 6071045, at *2 (C.D. Cal. Jan. 17, 2018)................................................... 9

*Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922 (9th Cir. 2004)............................................................................................................... 11

*Free-Free (USA) Inc. v. Housewares Int'l Inc.*, No. 2:18-CV-03142-SJO-E, 2019 WL 4194307 (C.D. Cal. Apr. 23, 2019).............................................................. 6

*In re Karl Suleman Enterprises Pty*, 2004 WL 3255486, at *5 (N.D. Cal. Jan. 20, 2004)...................................................................................................................... 8

*In re Notman*, 2015 WL 5025265 (Bankr. E.D. Cal. Aug. 24, 2015) ...................... 12

*K & N Eng'g, Inc. v. Bulat*, 510 F.3d 1079 (9th Cir. 2007) ...................................... 19

*Kristian v. United States*, 2020 WL 102987, at *1 (Fed. Cl. Jan. 7, 2020)................ 7

*Lal v. California*, 610 F.3d 518 (9th Cir. 2010) ....................................................... 11

*Langley v. Tulare Police Dep't*, 2017 WL 633901, at *1 (E.D. Cal. Feb. 15, 2017).. 6

*Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097 (9th Cir. 2006)........................ 11

*Mazal Grp., LLC v. Abeckaser*, 2020 WL 2374945, at *2 (C.D. Cal. Jan. 2, 2020). 18

*Mikuni Ginko, Ltd. v. Feng Chen Buffet, Inc.*, 2020 WL 2128646, at *6 (C.D. Cal. May 5, 2020) ...................................................................................................... 18, 19

*S.A. ex rel. L.A. v. Exeter Union Sch. Dist.*, 2009 WL 1953462, at *2 (E.D. Cal. July 7, 2009)................................................................................................................... 8

*Spates-Moore v. Henderson*, 305 F. App'x 449 (9th Cir. 2008)............................... 11

*Speculative Prod. Design, Inc. v. Qing Shi*, 2011 WL 13220104, at *4 (C.D. Cal. Aug. 4, 2011)........................................................................................................ 19

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1   *Stanley Black & Decker, Inc. v. D&L Elite Investments, LLC*, 2014 WL 3738327, at
2   \*17 (N.D. Cal. June 20, 2014)..........................................................................19

3   *U.S. ex rel. Felix Haro Const., Inc. v. St. Paul Fire & Marine Ins. Co.*, 2009 WL
    1770156, at \*3 (E.D. Cal. June 23, 2009) ..........................................................7

4   *United States v. 1982 Sanger 24' Spectra Boat*, 738 F.2d 1043 (9th Cir. 1984).........7

5   *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085 (9th
6   Cir. 2010).........................................................................................................13

7   *United States v. St. Paul Fire & Marine Ins. Co.*, 2009 WL 1260239, at \*2 (E.D.
    Cal. May 7, 2009)...............................................................................................8

8   *Wilson v. Moore & Assocs., Inc.*, 564 F.2d 366 (9th Cir. 1977) ................................7

9   *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082 (N.D. Cal. 2014) ...............................18, 19

10                                                          Statutes

11   FRCP 5(a)(1)(B) .....................................................................................................7

12   FRCP 5(a)(2)...........................................................................................................7

13   FRCP 5(b)(2)(E) .....................................................................................................9

14   FRCP 5(d)(1)(B)(i) ...........................................................................................7, 10

15   FRCP 55(b) .............................................................................................................9

16   FRCP 55(b)(2) ....................................................................................................7, 8

17   FRCP 60(b)(6) ......................................................................................................11

18
19
20
21
22
23
24
25
26
27
28

4630297.2
RAGEON, INC.'S SUPPLEMENTAL BRIEF

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2   **I.    INTRODUCTION**

3          Having no other hook on which to hang its hat, Atari has transformed this

4   fight into a credibility contest, which is puzzling because it is *Atari* that has engaged

5   in *successive* acts of deception.  Indeed, contrary to its opposition's statement of

6   facts, Atari wholly concealed from this Court in its January 29 Default Application

7   that it had *granted RageOn an extension of time until January 30* to answer.  **When**

8   **Atari sought entry of RageOn's default, it falsely declared to the Clerk of the**

9   **Court that RageOn's deadline to respond was January 21, 2020.**  Doc No. 12.

10  This was clearly false.  Doc. No. 14-4 at p. 3 ("Dear Betty: Based on your

11  representation below that you will file an Answer on or before January 30, we will

12  hold off filing our default papers.")  Thus, when Atari sought *and obtained* a default

13  in this case, RageOn was not actually in default.[1]  Everything then was tainted.

14         As if one material misrepresentation were not bad enough, Atari next

15  misrepresented to the Court that its Default Judgment Application was being served

16  on RageOn's registered agent.  Doc. No. 14-1, ¶ 2.e.  This was false also; that

17  Application was never served on RageOn's registered agent.  As discussed below,

18  service of the Application is a critical requirement, and the failure to strictly comply

19  with this requirement constitutes a severe due process violation that mandates that

20  the resulting judgment be set aside.  Atari knew it had falsely represented that the

21  Application had been served on the registered agent, given that in Mr. Wesley's

22  subsequent declaration, Doc. No. 28-1, ¶ 2, he quietly dropped any reference to

23  service on RageOn's registered agent.  In their zeal to extract RageOn's funds, Atari

24  and Mr. Wesley never corrected this material misrepresentation contained in their

25  Default Judgment Application, as they are obligated to do under FRCP Rule 11.

26  _____

27  [1] RageOn had until midnight on January 30 to file an Answer.  Therefore, the very
    earliest that Atari could have sought entry of default was January 31.

28

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1   Instead, in their supplemental opposition, Atari *doubled down* on this falsehood by

2   relying on the false information contained in their Judgment Application.  Doc. No.

3   53 at 13:3-5 ("… Atari served RageOn with copies of its application for default

4   judgment and its supporting papers. (Dkt. Nos. 14-1, ¶ 2; 28-2.)").

5        Leaving aside these material misrepresentations to the Court, when it came to

6   RageOn, Atari's deception saw no bounds.  While Atari communicated directly with

7   Mr. Krilivsky, it later reneged on its agreement to follow up regarding settlement,

8   ignored all of his emails, and refused to serve RageOn with *any* papers, electing

9   instead to e-mail (with no e-service agreement) only some papers to Ms. Tufariello

10  who never appeared in this action.  In so doing, Atari violated *a series of rules*.

11       And now, after procuring testimony *and* substantially un-redacted text

12  messages, Atari advances a sensational story that so grossly mischaracterizes the

13  facts that it exposes *Atari* for its *continued and systematic effort to mislead this*

14  *Court*.  Desperate to maintain a stranglehold over the default judgment[2] and distract

15  the Court with smokescreens and fiery hyperbole, Atari glosses over the material

16  facts that speak to the issue of "culpability": (1) Ms. Tufariello confirmed in writing

17  that she was handling this matter[3] and *not once* informed RageOn that she was <u>not</u>

18  representing RageOn in this matter;[4] (2) RageOn did not intend to default in this

19

20  [2] Atari's global parent reported net earnings of 2.3 million euros ($2.7 million) for
    the year ended March 31, 2020.  The default judgment here constitutes almost *half*
21  of all annual global net income.  Atari also reported that it received 900,000 euros
    ($1.1 million) from a litigation funder "in exchange for part of the future income to
22  be received by Atari in connection with six trademark infringement proceedings."
    Supplemental Declaration of Arash Beral ("Beral Supp. Decl."), ¶ 3, Exh. "A".
23

24  [3] Doc. No. 14-4 ("Keith: Yes, I am counsel for RageOn"); Doc. No. 53-2 at
    RAGEON_000082, 000085 ("Atari and I are in discussions I have 21 days And he
25  is aware if [sic] my traveling … I did respond to Keith in the Atari case").

26  [4]

27

28                                                                      (Continued…)

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  case;[5] and (3) ████████████████████████████████████████████

2  ████████████████████   Doc. No. 53-3 at RAGEON_000104 – 000109.[6]

3      Atari next attempts to unfairly foist legal responsibilities upon Mr. Krilivsky.

4  Atari suggests that Mr. Krilivsky *should have known* the ins and outs of professional

5  responsibility and civil procedure rules. Atari even calls Mr. Krilivsky a *liar*

6  because he claimed not to understand the legal implications of a default or default

7  judgment simply because he had occasion to encounter defaults and default

8  judgments. Atari goes well too far.[7]

9

10  _____

    (…Continued)

11  ████████████████████████████████████████████████

12  ████████████████████████████████████████████████

13  ████████████████████████████████████████████████

14  ████████████████████████████████████████████████

15

16  Beral Supp. Decl., ¶ 4, Exh. "B" at 196:12-17, 197:23 – 198:10. *Compare* Doc. No.
    53-2 at RAGEON_000070 (Ms. Tufariello informs RageOn that she "████████

17  ████████" and "████████████████████████████████"

18  [5] Not only did Mr. Krilivsky continuously follow up with Mr. Wesley (and was
    ignored), but he also messaged Ms. Tufariello, which evidence Mr. Krilivsky's

19  surprise after discovering that RageOn *may* have defaulted in this case; and while
    Mr. Krilivsky repeatedly questioned Ms. Tufariello about it, Ms. Tufariello ignored

20  Mr. Krilivsky, leaving him in the dark. Doc. No. 53-2 at RAGEON_000089 ("What
    happened with Atari? I received no communication from you – no draft, no update,

21  etc."); Doc. No. 53-3 at RAGEON_000097 ("Atari's came and went, it was Jan 30th
    and they filed a default because you didn't respond – is that true?").

22
    [6] Atari wholly ignores Mr. Krilivsky's March 13 message to Ms. Tufariello which

23  states: ████████████████████████████████████████████████
    ████████████████████████████████ Doc. No. 53-3 at

24  RAGEON_000108 (emphasis added). In other words, as of March 13, Mr.
    Krilivsky believed that ████████████████████████████████████████

25  ████████████████████████████████ Supplemental Declaration of Michael

26  Krilivsky ("Krilivsky Supp. Decl."), ¶ 3. Ms. Tufariello never did send any case
    files to RageOn. *Id.* at ¶ 3.

27  [7] The import of the Krilivsky Declaration that default judgments were "foreign" to
    him clearly meant that the *legal* term, i.e., *the legal consequences and legal effects*

28                                                                    (Continued…)

    4630297.2                              3
                    RAGEON, INC.'S SUPPLEMENTAL BRIEF

1     In its July 10 Order, this Court correctly observed that "[t]he other factors
2 relevant to the merits of Defendant's motion (existence of potentially meritorious
3 defenses and prejudice to Plaintiff) appear to weigh in favor of setting aside
4 default." Doc. No. 29, Fn. 7. And in its supplemental opposition, Atari elected not
5 to address these factors or the Court's opinion, opting to rest on earlier filed
6 arguments which the Court rejected. Doc. No. 54, Fn. 6, at p. 21. Atari is thus
7 effectively conceding that 2 of the 3 factors weigh in RageOn's favor. And as to the
8 first factor, RageOn did not engage in culpable conduct that led to the default. Atari
9 should not have sought default on January 29 in the first place, and even if that
10 action (and everything flowing therefrom) were proper, which they were not, there
11 was nothing that *RageOn* actually did that led to the default. Rather, it was the
12 lawyers (Mr. Wesley and Ms. Tufariello) who caused RageOn to suffer this harm.
13     For these reasons and those that follow, RageOn's motion should be granted.

14 **II.**   **LEGAL ARGUMENT**

15     **A.**   **Atari Improperly Defaults RageOn Before RageOn's Answer**
16       **Deadline Expired; Atari's Counsel Engaged in Unethical Conduct.**

17     The facts leading to the entry of RageOn's default are disturbing. The
18 "Daniel Sahad" issue aside – which issue was a red herring to begin with[8] – Mr.

19 _____

20 (…Continued)
21 of a default judgment, was foreign to him, not that he had never heard of the term
before. Mr. Krilivsky could not have been clearer at his deposition when he testified
22 that he thought that a default ▉▉▉▉▉▉▉▉▉
23 ▉▉▉▉▉▉ and with respect to a default judgment: ▉▉▉▉▉
24
25 ▉▉▉ Later at his deposition, Mr. Krilivsky testified that ▉▉▉
26 ▉▉▉ Beral Supp. Decl., ¶ 4, Exh. "B" at 71:13-19, 74:4-14, 197:13-18.

27 [8] RageOn disabused Atari of the notion that Mr. Krilivsky was "making up a bizarre
28 story." Atari's fictional narrative was beyond absurd anyway. The text messages
                        (Continued…)

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4630297.2         4

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  Wesley communicated with Mr. Krilivsky and Ms. Tufariello in January. Mr.

2  Wesley granted Ms. Tufariello an extension until January 30 to answer. Doc. No.

3  14-4. And Ms. Tufariello communicated that confirmed extension to Mr. Krilivsky.

4  Doc. No. 53-2 at RAGEON_000085 ("Our Answer is now due on the 30th").

5       But, unbeknownst to Mr. Krilivsky, Mr. Wesley reneged on that promise and

6  filed a Default Application on January 29. Atari appears to have manufactured its

7  own narrative that because Ms. Tufariello had not yet answered questions regarding

8  the Daniel Sahad issue, it must have been a ruse and, thus, the extension was void.

9  Then, without any warning to Mr. Krilivsky, Atari filed its Default Application

10 *before RageOn's time to answer had expired and* *without serving RageOn*.

11      Rule 4.1 of the California Rules of Professional Conduct states that "a lawyer

12 shall not knowingly (a) make a false statement of material fact or law to a third

13 person". In the comments to that Rule, the following text explicitly warns that "A

14 nondisclosure can be the equivalent of a false statement of material fact or law under

15 paragraph (a) where a lawyer makes a partially true but misleading material

16 statement or material omission". As soon as Mr. Wesley reached the (false)

17 conclusion about the "Daniel Sahad ruse" and decided to void the extension,

18 Mr. Wesley had an ethical duty, at a minimum, to communicate the true state of

19 affairs to Mr. Krilivsky and warn Mr. Krilivsky about an impending default.[9]

20 _____

21 (…Continued)

22 clearly show that Mr. Krilivsky was led to believe that Daniel Sahad was connected
   to Atari. Doc. No. 53-2 at RAGEON_000085; Doc. No. 59, ¶ 9.
23

24 [9] Mr. Wesley cannot excuse this failure by taking shelter in the ethical prohibition
   against communications with a represented party. That prohibition did not stop
25 Mr. Wesley from communicating with Mr. Krilivsky or reading his subsequent
   emails. It is entirely incongruent for Mr. Wesley to argue that he can communicate
26 with Mr. Krilivsky but that he is ethically barred from correcting misinformation
   that, if left uncorrected, would be highly prejudicial to RageOn. And as explained
27 before, Doc. No. 59, Fn. 1, p. 3, if Mr. Wesley truly was in fact concerned about his
   ethical duties, he could easily have informed Mr. Krilivsky that he could not speak
28 with Mr. Krilivsky absent Mr. Tufariello's consent (or could have contacted Ms.
                                                                        (Continued…)

4630297.2

5

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1   More to the point, where a plaintiff's attorney misleads a defendant about

2   taking a default, the Court will set aside the default on the grounds that the default

3   was procured unfairly, without adequate due process and notice.  In *Free-Free*

4   *(USA) Inc. v. Housewares Int'l Inc.*, No. 2:18-CV-03142-SJO-E, 2019 WL 4194307

5   (C.D. Cal. Apr. 23, 2019), after defendant Housewares failed to timely file an

6   answer, a default was entered.  The Court held that defendant Housewares, which

7   had been involved in prior litigation with the plaintiff, was "sophisticated" but

8   nonetheless, the Court set aside the default because the parties were in discussions

9   and plaintiff's attorney never warned defendant about a default.  Even after the

10  default was entered, plaintiff's attorney misled the defendant and its newly engaged

11  counsel that plaintiff would not seek damages against the defendant.  *Id.*, at *7-8.

12  Likewise here, Mr. Krilivsky was led to believe that Atari had granted an

13  extension and that thereafter, the parties were continuing to work towards a

14  resolution.[10]  Rather than honor that commitment, Atari exploited the state of

15  misinformation and defaulted RageOn (even though it was not in default).  And as

16  explained above, ***Atari not only concealed these facts from the Court when it***

17  ***sought to default RageOn, it lied to the Court that RageOn's answer deadline had***

18  ***expired when it had not***.  "Until and unless Defendant is in default, Plaintiff may

19  not seek entry of default against Defendant Colejio or judgment thereon."  *Langley*

20  *v. Tulare Police Dep't*, 2017 WL 633901, at *1 (E.D. Cal. Feb. 15, 2017); *Kristian*

21  _____

22  (...Continued)

23  Tufariello about the same thing).  He received email after email from Mr. Krilivsky
    and simply decided to remain silent.  Rule 4.2 of the California Rules of
24  Professional Conduct prohibit direct communications with parties about the *subject*
    *of the representation*.  A ministerial communication regarding necessary consent to
25  speak with a party does not concern the "subject of the representation."

26  [10] Mr. Krilivsky testified that Mr. Wesley told him that he would speak with Atari
    and get back to Mr. Krilivsky via e-mail concerning a potential ████████ or to
27  "████████████████████"; Mr. Krilivsky described the conversation with Mr. Wesley
28  as a "great conversation."  Beral Supp. Decl., ¶ 4, Exh. "B" at 48:11 – 51:25.

4630297.2

6

1    *v. United States*, 2020 WL 102987, at \*1 (Fed. Cl. Jan. 7, 2020) (holding that where

2    plaintiff filed an application for default judgment when defendant's response

3    deadline had yet to run, "on its face the application is baseless and must be denied");

4    *U.S. ex rel. Felix Haro Const., Inc. v. St. Paul Fire & Marine Ins. Co.*, 2009 WL

5    1770156, at \*3 (E.D. Cal. June 23, 2009), report and recommendation adopted, 2009

6    WL 1911620 (E.D. Cal. June 30, 2009) ("Court finds that entry of default by the

7    Clerk was inappropriate … it was premature to enter the default").

8        **B.**     **Atari Failed to Serve RageOn with its Default Application, Nor did**

9            **it File a Proof of Service with the Court.**

10    FRCP 5(a)(1)(B) provides that each pleading filed after the original complaint

11    must be served on each party. While Rule 5(a)(2) provides that "no service is

12    required on a party who is in default for failing to appear," at the time Atari filed its

13    Default Application, RageOn was *not* in default.[11] As such, Atari was required to

14    serve RageOn with the Default Application, but it failed to do so. Atari also failed

15    to file a proof of service as required under FRCP 5(d)(1)(B)(i).

16        **C.**     **Atari Failed to Serve the Legally Required Notice of the**

17            **Application for Default Judgment on RageOn.**

18    One of the crucial requirements for an application for default judgment is to

19    provide notice of the application to the defaulting party when required under Rule

20    55(b)(2). The due process requirements under Rule 55(b)(2) is rigorously enforced

21    in the Ninth Circuit: "The failure to provide 55(b)(2) notice, if the notice is required,

22    is a ***serious procedural irregularity*** that usually ***justifies setting aside a default***

23    ***judgment*** or reversing for the failure to do so." *See Wilson v. Moore & Assocs.,*

24    *Inc.*, 564 F.2d 366, 369 (9th Cir. 1977) (emphasis added); *United States v. 1982*

25    *Sanger 24' Spectra Boat*, 738 F.2d 1043, 1046 (9th Cir. 1984) ("in the context of

26

27    [11] Since the default was entered prematurely, RageOn was arguably never in default

28    and Atari was obligated to serve RageOn with all papers.

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  entry of a default judgment, this court has stated that the failure to provide required

2  notice is 'a serious procedural irregularity that usually justifies setting aside a

3  default judgment'"); *In re Karl Suleman Enterprises Pty*, 2004 WL 3255486, at *5

4  (N.D. Cal. Jan. 20, 2004) (same); *Felix Haro v. St. Paul*, *supra*, 2009 WL 1770156,

5  at *4 (E.D. Cal. June 23, 2009) report and recommendation adopted, 2009 WL

6  1911620 (E.D. Cal. June 30, 2009) ("Plaintiff has not established default and notice,

7  and therefore, Plaintiff has not demonstrated entitlement to a default judgment").

8     FRCP 55(b)(2) provides that "[i]f the party against whom a default judgment

9  is sought has appeared personally or by a representative, that party or its

10 representative must be served with written notice of the application at least 7 days

11 before the hearing." *See* Fed. R. Civ. Proc. 55(b)(2). "'Appearance' for purposes of

12 Rule 55(b)(2) has been broadly construed in the Ninth Circuit." *In re Karl Suleman*

13 *Enterprises Pty*, No. C 03-4841 MJJ, 2004 WL 3255486, at *4 (N.D. Cal. Jan. 20,

14 2004) ). "An appearance for the purpose of Rule 55 need not be a formal one and

15 may consist even of informal contacts made by the defaulting party where the

16 defaulting party demonstrates a clear purpose to defend the suit." *See Felix Haro v.*

17 *St. Paul*, *supra*, 2009 WL 1770156, at *3 (E.D. Cal. June 23, 2009) report and

18 recommendation adopted, 2009 WL 1911620 (E.D. Cal. June 30, 2009); *United*

19 *States v. St. Paul Fire & Marine Ins. Co.*, 2009 WL 1260239, at *2 (E.D. Cal. May

20 7, 2009) ("[a]n appearance for the purpose of Rule 55 need not be a formal one and

21 may consist even of informal contacts made by the defaulting party where the

22 defaulting party demonstrates a clear purpose to defend the suit"); *S.A. ex rel. L.A. v.*

23 *Exeter Union Sch. Dist.*, 2009 WL 1953462, at *2 (E.D. Cal. July 7, 2009)

24 ("Plaintiff apparently did not serve the Application for Default Judgment upon

25 Defendant as a proof of service did not accompany the application.  The Court

26 acknowledges that such service is not required, yet in light of Plaintiff's exhibits,

27 including recent correspondence with legal counsel for Exeter Union School

28 District, the Court finds this concerning . . . the Court finds the application for

4630297.2

1  default judgment to be incomplete").[12]

2  Here, Mr. Krilivsky made clear, and RageOn was unequivocal in its desire, to

3  defend itself against this suit, including in a January 23, 2020 call between Mr.

4  Krilivsky and Mr. Wesley and follow-up email (Doc. No. 14-3); the February 3,

5  2020 email from Mr. Krilivsky to Mr. Wesley (Doc. No. 26-1, Exh. "G"); and the

6  February 11, 2020 email from Mr. Krilivsky to Mr. Wesley (Doc. No. 26-1, Exh.

7  "I"). This fits within the Ninth Circuit's broad interpretation of "appearance,"

8  entitling RageOn to notice pursuant to FRCP 55(b).

9  However, Atari failed to properly serve the Application to RageOn as

10  required under FRCP 55(b), which justifies setting aside the default judgment.  In its

11  supplemental opposition, Atari doubles down on its claim that it had properly served

12  the Application for Default Judgment upon RageOn's registered agent (Doc. No. 53,

13  13:3-5, citing Doc. No. 14-1, ¶ 2.e). This was false; the Application was not served

14  upon RageOn's registered agent.  Krilivsky Supp. Decl., ¶ 5.[13]  In addition, Atari

15  attempted to (improperly) serve the Application by e-mail on Ms. Tufariello who

16  had not appeared in this case and with no e-service agreement in place.[14]  This

17  

18  [12] See DDCIP Techs., Inc. v. 4INFO TV, LLC, No. 07CV0400 DMS (JMA), 2007
WL 9777931, at *2 (S.D. Cal. Oct. 12, 2007) ("Plaintiff has failed to present any
19  argument or evidence on the possibility of prejudice. Given the Defendants' failure
to appear, and Plaintiff's failure to serve its application for default judgment on the
20  Defendants, the Court is unable to assess whether there is a dispute about any
material facts or the reason for Defendants' defaults"); First Home Bank v. T.R.A.V.
21  Meat Corp., No. CV 17-7670-MWF(PLAX), 2018 WL 6071045, at *2 (C.D. Cal.
Jan. 17, 2018) ("as a matter of discretion, this Court consistently requires that a
22  plaintiff serve a motion for default judgment on the relevant defendant(s)").

23  [13] Mr. Wesley' July 8 Declaration states that the Application for Default Judgment
had been transmitted by his secretary to Ms. Tufariello by email on February 24.
24  Doc. No. 28-1, ¶ 2. Notably, there is no reference to service upon any registered
agent for RageOn, which Mr. Wesley had previously attested to in support of the
25  Application.  Doc. No. 14-1, ¶ 2.  Yet no effort was made to correct his glaring
discrepancy or call attention to the misrepresentation contained in the Application.
26  
[14] Pleadings may be served by electronic means only if "the person consented to
27  [electronic service] in writing." See Fed. R. Civ. Proc. 5(b)(2)(E). Here, the parties
never consented in writing to accept service by electronic means.
28  

4630297.2                          9
RAGEON, INC.'S SUPPLEMENTAL BRIEF

1 "service" was clearly defective.  And Atari's Application for Default Judgment
2 failed to include a properly executed Certificate of Service, as required under FRCP
3 5(d)(1)(B)(i).  Doc. No. 14.  Atari's failure to timely file a proper certificate of
4 service constitutes grounds for denying the application.  *See e.g. Felix Haro v. St.*
5 *Paul*, 2009 WL 1770156, at *3 (E.D. Cal. June 23, 2009), report and
6 recommendation adopted, 2009 WL 1911620 (E.D. Cal. June 30, 2009).

7      Most certainly, at this point in time, Mr. Wesley knew that Ms. Tufariello had
8 provided false information to Mr. Krilivsky who, not knowing that the information
9 was false, conveyed the information to Mr. Wesley; she had deliberately failed to
10 respond to Mr. Wesley's inquiries about Mr. Sahad; and she had abandoned her
11 client given that she failed to respond to any further inquiries or otherwise failed to
12 monitor the docket and file the appropriate responsive pleadings.  Yet Mr. Wesley
13 deliberately chose to email the pleading to Ms. Tufariello and *not to Mr. Krilivsky* --
14 with whom Mr. Wesley had a substantive discussion about the litigation and who
15 was repeatedly emailing Mr. Wesley for updates.  The service of the Application for
16 Default Judgment was not only procedurally defective, but it was strategically
17 emailed to the one person Mr. Wesley knew would ignore it.

18      **D.**    **Atari Did Not Meet and Confer Over its Default Judgment**
19           **Application.**

20      Atari failed to conduct a pre-filing conference prior to the filing the Default
21 Judgment Application, and its Notice failed to contain the requisite language of
22 compliance.  Atari cannot escape the requirement to comply with L.R. 7-3 (or this
23 Court's Standing Order) as an application for default judgment is not one of the
24 enumerated exceptions.  Moreover, the default was improperly entered before
25 RageOn was in default.  As such, and at a minimum, Atari was required to confer.

26      **E.**    **Even if Default and Default Judgment were Properly Entered,**
27           **RageOn Did Not Engage in Culpable Conduct.**

28      RageOn submits that given Atari's misrepresentations to the Court and the

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  slew of procedural errors noted above, the default and default judgment should be
2  set aside and vacated.  In the event the Court disagrees, RageOn submits that the
3  "culpability" issue falls squarely in RageOn's favor.  *Community Dental Servs. v.*
4  *Tani*, 282 F.3d 1164 (9th Cir. 2002) is the prevailing authority on excusing a
5  defendant from a default due to an attorney's gross negligence.  In *Tani*, defendant's
6  counsel failed to serve an answer, oppose motions, or return calls, all the while
7  misleading the defendant into believing that the case was being handled.  The
8  defendant did not become aware of his attorney's gross negligence until after a
9  default judgment was entered.  While the district court refused to set aside the
10 default based on then-existing law, the Ninth Circuit reversed and adopted new law:
11 "We join the Third, Sixth, and Federal Circuits in holding that where the client has
12 demonstrated gross negligence on the part of his counsel, a default judgment against
13 the client may be set aside pursuant to Rule 60(b)(6)."  *Id*. at 1169.  Since *Tani*, the
14 Ninth Circuit has not only embraced its holding, but expanded its relief to other
15 situations where the prejudice suffered is determined to be as severe as a default.
16 *See e.g. Lal v. California,* 610 F.3d 518, 524 (9th Cir. 2010); *Spates-Moore v.*
17 *Henderson*, 305 F. App'x 449, 451 (9th Cir. 2008).

18      Atari's supplemental opposition flouts this well-established line of authorities
19 and instead cites to cases that are entirely inapposite.  In *Franchise Holding II*, for
20 instance, the defendant deliberately chose _not_ to allege its attorney was negligent.
21 *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc*., 375 F.3d 922,
22 927, fn. 3 (9th Cir. 2004) ("We note that [defaulting defendant] does not contend
23 that its attorney's actions constituted 'gross negligence' as discussed in *[Tani]* ...").
24 And in *Latshaw v. Trainer Wortham & Co*., 452 F.3d 1097, 1103 (9th Cir. 2006),
25 the Court refused to extend *Tani* to relieve plaintiff from her *voluntary acceptance*
26 of an offer of judgment under FRCP 68, because "*Tani* was explicitly premised
27 upon the default judgment context of the case."

28      Atari's other cited authorities are equally unavailing, as none involves a

4630297.2

11

1  default that resulted from the gross negligence of defendant's attorney.  *See Direct*
2  *Mail Specialists, Inc. v. Eclat Computerized Techs., Inc*., 840 F.2d 685 (9th Cir.
3  1988) (defaulting defendant did not even hire an outside attorney, there was no
4  reference to any negligence, and case was decided prior to *Tani*); *Allmerica Fin. Life*
5  *Ins. & Annuity Co. v. Llewellyn*, 139 F.3d 664, 666 (9th Cir. 1997) (case did not
6  involve a default, and it was decided prior to *Tani*); *Casey v. Albertson's Inc.*, 362
7  F.3d 1254, 1260 (9th Cir. 2004) (case did not involve a default; court rejected
8  plaintiff's attempt to blame her loss on summary judgment on her prior counsels'
9  inexperience, because she should have complained a year earlier, when she hired
10  new competent counsel); *In re Notman*, 2015 WL 5025265 (Bankr. E.D. Cal. Aug.
11  24, 2015) (there was no allegation of gross negligence by defendant's attorney, as
12  all of the default and default judgment papers were served on both the defendant and
13  his attorney separately, both did not oppose, and both were aware of the default and
14  default judgment).

15      As discussed before, Ms. Tufariello's conduct here was similar to, and indeed
16  more egregious than the behavior in *Tani*.  Ms. Tufariello failed to answer the
17  Complaint and appears to have failed to properly obtain extensions of time.[15]  Ms.
18  Tufariello led RageOn to believe the matter was being handled appropriately when it
19  was not, and she never – not once – informed RageOn that she was not representing
20  RageOn in this matter.[16]

21      Moreover, RageOn did not engage in culpable behavior by failing to answer
22  the Complaint.  A defendant is culpable if it "intentionally" failed to answer.  *United*

23  _____

24  [15] Ms. Tufariello was also the source of the Daniel Sahad confusion.

25  [16] It bears noting that Ms. Tufariello informed Mr. Krilivsky over a year ago that she
    had been working with counsel in California who was assisting RageOn with
    California matters and billing RageOn through Ms. Tufariello's firm.  Doc. No. 53-2
26  at RAGEON_000014-000015.  To the extent the Court is wondering whether Mr.
    Krilivsky should have known that Ms. Tufariello – a New York lawyer – could not
27  have appeared in this action in the first place, Ms. Tufariello was clearly
    representing to Mr. Krilivsky that she could quarterback RageOn's California cases.
28

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  *States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1092 (9th

2  Cir. 2010). "[I]n this context, the term 'intentionally' means that a movant cannot

3  be treated as culpable simply for having made a conscious choice not to answer;

4  rather, to treat a failure to answer as culpable, the movant must have acted with bad

5  faith, such as an 'intention to take advantage of the opposing party, interfere with

6  judicial decisionmaking, or otherwise manipulate the legal process.'" *Id.* The

7  evidence shows that Mr. Krilivsky contacted both Ms. Tufariello and Mr. Wesley

8  many times to inquire about the status of the litigation. They both ignored him.

9      **F.**    **Atari's Contrived Attempt at Vilifying RageOn is a Subterfuge.**

10        As if its earlier misrepresentation were not enough, in its supplemental

11  opposition papers, Atari continues to engage in a misinformation campaign. As the

12  below chart shows, however, *none* of Atari's charges are true:

| Atari's Charge | The Truth |
|---|---|
| Mr. Krilivsky knew that RageOn had defaulted. | Mr. Krilivsky *questioned* whether a default was entered, but was ignored by counsel. *See* Fn. 5, *supra*. |
| Mr. Krilivsky lied about his knowledge of defaults and default judgments. | Mr. Krilivsky did not understand the *legal* terms and implications of defaults and default judgments. *See* Fn. 7, *supra*. |
| Mr. Krilivsky manufactured the "Daniel Sahad" story. | The text messages with Ms. Tufariello clearly show that Mr. Krilivsky was led to believe that Daniel Sahad was connected to Atari. *See* Fn. 8, *supra*. |
| RageOn interviewed new attorneys to replace Ms. Tufariello. | At the direction of a judge in another case in 2019, RageOn was instructed to look for counsel to assist Ms. Tufariello and work alongside Ms. Tufariello. Doc. No. 53-2 at RAGEON 000074 (" ███████████████ ██████████████████ "); Beral Supp. Decl., ¶ 4, Exh. "B" at 139:5 – 141:2 (" ████████████ ") When Ms. Tufariello moved to withdraw as RageOn's counsel in the *Ward* case in 2020, *after this case was already in default*, RageOn spoke with attorneys to take over for Ms. Tufariello |

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

| Atari's Charge | The Truth |
|---|---|
| | in the *Ward* case and, *potentially*, for other IP matters either: (a) if Ms. Tufariello were to terminate her relationship with RageOn for *all* of RageOn's matters (which she did not do); or (b) it made sense to replace Ms. Tufariello in other matters. Krilivsky Supp. Decl., ¶ 3. At no time was Ms. Tufariello "off the hook" in connection with this matter. Doc. No. 53-3 at RAGEON_000108 (████████████████ ████████████████) (emphasis added). |
| RageOn's defaults in *Taieb, Lopez, and Coogi* suggest a pattern or practice of defaulting. | RageOn hired Ms. Tufariello to set aside the default in *Taieb* based on the fact that RageOn had not received notices in that case. Doc. No. 53-2 at RAGEON_000010. Settlement discussions and settlement in the *Lopez* case led to not having to answer, and the case was ultimately resolved. Regarding *Coogi*, Mr. Krilivsky testified that he was not aware of RageOn being served in that case nor was he aware of a default. Beral Supp. Decl., ¶ 4, Exh. "B" at 74:25 – 75:23. |
| Ms. Tufariello's comment ████████ ████████ terminated the attorney-client relationship | The text messages evidence a rocky yet warmhearted relationship between attorney and client and despite the disagreements and disputes, Ms. Tufariello continued to service RageOn leading Mr. Krilivsky to believe that Ms. Tufariello would never let him down. Doc. No. 53-2 at RAGEON_000018-000023 (████████████████ ████), at RAGEON_000039-000041 (████████████ ████), at RAGEON_000050-000053 (████████████████ ████████████████████ ████), at RAGEON_000057-000059 (████████████ ████████████████ ██████) RAGEON_000061-000068 (████████████████ ████████████████ ████████████████), at RAGEON_000074 (████████████ ████), at RAGEON_000075-000076 (████████████ ████████████████), at RAGEON_000080-000082 (████████████ ██), at RAGEON_000083-000084 (████████ ████); Beral Supp. Decl., ¶ 4, Exh. "B" at 48:11 – 51:25 ("████████████████) |

| Atari's Charge | The Truth |
|---|---|
| | ") |
| RageOn did not pay Ms. Tufariello for her services | RageOn Beral Supp. Decl., ¶ 4, Exh. "B" at 117:8-20; Doc. No. 53-5. By 2020, Ms. Tufariello expressed Doc. No. 53-3 at RAGEON_000104 (" "). |
| Mr. Krilivsky orchestrated a dispute between Mr. Lopez and Ms. Tufariello, which he should have known would prohibit Ms. Tufariello from not only representing RageOn in the Lopez case but also in the Atari case. | Mr. Lopez was a plaintiff in a lawsuit against RageOn. On October 16, 2019, Mr. Lopez forwarded a signed settlement agreement to Mr. Krilivsky and Ms. Tufariello to resolve that litigation. Doc. No. 53-3 at RAGEON_000091. Thereafter, the three had various discussions as Mr. Lopez became more involved with RageOn's internal affairs and invested in RageOn and its legal matters. While Mr. Krilivsky was attempting to act as a "mediator" between Mr. Lopez and Ms. Tufariello, Beral Supp. Decl., ¶ 4, Exh. "B" at 103:2-20, Ms. Tufariello refused to provide Mr. Krilivsky or Mr. Lopez any information regarding pending legal matters. Mr. Krilivsky did not orchestrate the dispute, nor did he know or was he told that Mr. Lopez's claims against Ms. Tufariello would effectuate a wholesale conflict preventing Ms. Tufariello from representing RageOn in this case. Krilivsky Supp. Decl., ¶ 4. |
| Mr. Krilivsky somehow extorted Ms. Tufariello. | It was *Ms. Tufariello* who refused to provide RageOn with any case information or case files. Doc. No. 53-3 at RAGEON_000100-000109. Despite being obligated as RageOn's attorney to keep RageOn informed and provide RageOn – the client – materials, she was the one who refused to do what was legally required of her and attempted to extract a stipulation from Mr. Lopez in exchange for information and files. She clearly violated her ethical duties in this regard. |
| RageOn lied when it claimed that Ms. Tufariello continued to advise RageOn after March 13, 2020 | The text messages themselves evidence at least one chain of communications on March 19, 2020 where Ms. Tufariello was advising RageOn regarding a potential appeal. Doc. No. 53-3 at RAGEON_000110. While Atari downplays the nature of this communication, it is clearly an attorney giving a |

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

| Atari's Charge | The Truth |
|---|---|
| | client legal advice. And given what transpired in connection with disputes with Ms. Tufariello in the past with Ms. Tufariello continuing to represent and advise RageOn regardless of any dispute, RageOn could not have known that Ms. Tufariello was intent on terminating the attorney-client relationship altogether. |
| RageOn lied when it claimed that the U.S. Marshal swept its bank account. | Atari's July 14, 2020 Notices of Levy (Doc. Nos. 30-33) sought to levy against RageOn's bank account in the amount of $1,125,665.00. And on the date of levy, June 26, the U.S. Marshal swept the entire bank account (approx. $882,000). If there were more money in the account at that time, which there was not, the seizure would have been greater (up to $1,125,665). When RageOn subsequently filed an Application for Release of Funds and disclosed its total ending June bank account balance to be $47,150, that number was as of *June 30*. In other words, in the four days subsequent to the levy, RageOn received revenues in its bank account in the amount of $47,150. RageOn's claim that its entire bank account was swept as of the levy date was absolutely and categorically true. |
| RageOn was dishonest about its finances. | RageOn has always truthfully reported its financial position. As of the date RageOn originally filed this Application, its financial situation was (and continues to be) dire. It did not know at the time whether third parties would provide it lending facilities. As Mr. Krilivsky put it, he had no "crystal ball." Beral Supp. Decl., ¶ 4, Exh. "B" at 174:1 – 175:8. Beyond that, those lending facilities has further harmed RageOn's financial position given the high interest and other terms of those facilities. *Id.* at 166:10 – 167:8 and 173:19-25. |
| RageOn misrepresented to Judge Audero that the text message redactions "pertain to other cases and other matters" or otherwise concealed evidence or information from the Court. | The complete quote by RageOn's counsel (which Atari conveniently hides from the Court) was: "The problem is, those redactions that were submitted as exhibits, those redactions all pertain to other cases and other matters. *I mean, specifically I'm thinking of what Mr. Venezia just raised. The two pressing deadlines are. Everything else that was redacted deals with other cases and other matters. And the point of us submitting that to the Judge was to show that Ms. Tufariello was not advising Mr. Krilivsky that they were pressing deadlines in the Atari case at that point in time.*" Beral Supp. Decl., ¶ 5, Exh. "C" (July 22 Court Transcript) at 19:18 – |

16

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

| Atari's Charge | The Truth |
|---|---|
| | 23:11. RageOn's counsel was specifically thinking of and referencing that specific redaction ("The only two pressing deadlines were [REDACTED]") when making this remark. Atari does make a valid point, however, that the message appearing in the same chain of messages – "Not true. I was told that we defaulted on Atari, that Taieb was supposed to be responded to and I did not receive proof of the opposition to attorneys fees was filed" – was originally redacted (but later un-redacted and produced). Doc. No. 53-3 at RAGEON_000096. Originally redacting the Atari-related portion of this message was nothing more than a clerical error. Indeed, Mr. Krilivsky's July 6 Declaration disclosed that he had been informed by an attorney friend that a default had been entered. Doc. No. 26-1, ¶ 11 ("Therefore, I consulted an attorney friend of mine who informed me that some 'default' had been entered"). There was *never* an intent to conceal this information from the Court. *See also* Doc. No. 59. |
| RageOn refused to produce documents. | Atari never served appropriate Rule 34 production requests and never sought leave of Court to conduct document discovery. That aside, the parties narrowed the issues down to the messages and RageOn voluntarily produced them. *See* Doc. No. 59, ¶¶ 8-18. |
| RageOn refused to extend the briefing schedule because it was afraid of damaging testimony from Ms. Tufariello. | RageOn did not agree to extend the briefing schedule because Atari had intentionally delayed discovery and, in light of the Court's denial of RageOn's Application for Release of Funds, RageOn could not afford further delay. RageOn made its position clear to Judge Audero. Beral Supp. Decl., ¶ 5, Exh. "D" (July 29 Court Transcript) at 14:9 – 18:3. It had nothing to do with Ms. Tufariello. Quite the opposite, *RageOn was advising Atari what to do to compel Ms. Tufariello's deposition*. |
| Mr. Krilivsky's social media demonstrates dishonesty regarding COVID-19. | Mr. Krilivsky lives in a COVID-free community in Rancho Mirage, California which meets strict CDC protocols and mandates testing for all residents. Beral Supp. Decl., ¶ 4, Exh. "B" at 201:9 – 202:25; Krilivsky Supp. Decl."), ¶¶ 6-9. |

4630297.2

17

RAGEON, INC.'S SUPPLEMENTAL BRIEF

G. **The Default Judgment is Grossly Excessive and Bears No Plausible Relationship with the Actual Alleged Damages.**

"In determining the appropriate amount of statutory damages to award on default judgment, courts in this district have considered whether the amount of damages requested bears a '*plausible relationship to Plaintiff's actual damages*.' While a plaintiff in a trademark or copyright infringement suit is entitled to damages that will serve as a deterrent, it is ***not entitled to a windfall***." *See Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014) (emphasis added); *Mazal Grp., LLC v. Abeckaser*, 2020 WL 2374945, at *2 (C.D. Cal. Jan. 2, 2020) (plaintiff not entitled to windfall); *Mikuni Ginko, Ltd. v. Feng Chen Buffet, Inc.*, 2020 WL 2128646, at *6 (C.D. Cal. May 5, 2020) (statutory damages must bear a "plausible relationship" to plaintiff's actual damages).

A plaintiff must therefore set forth evidence of the actual damages it sustained as a result of the alleged infringing sales in order to demonstrate that the claimed statutory damages are plausibly related to the plaintiff's actual damages and would not result in a windfall. Failure to do so warrants denial of the request for default judgment. *See Mazal, supra,* 2020 WL 2374945, at *2 (dismissing motion for default judgment under § 1117(c) where "[p]laintiff has not provided evidence of its damages or the amount of infringing sales, or explanation as to why this amount is appropriate, and thus no evidence for the Court to assess whether the requested amount would be a windfall"). In this case, Atari failed to provide evidence of its actual damages, a necessary prerequisite to awarding damages.

When evidence of actual damages is presented, courts have awarded double or triple the actual damages in order to ensure that there is a plausible relationship between the statutory damages award and the plaintiff's actual damages. *See Mikuni, supra,* 2020 WL 2128646, at *6 (the court awarded "$3,000 in statutory damages for Defendant's willful infringement of Plaintiffs' trademark based on the need to deter Defendant from future misconduct"); *Speculative Prod. Design, Inc. v.*

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1   *Qing Shi*, 2011 WL 13220104, at \*4 (C.D. Cal. Aug. 4, 2011) (the court awarded

2   $10,320 in statutory damages, finding that "[t]his amount is double the estimate of

3   Plaintiff's actual damages as calculated above. It is within the statutory range

4   established by Congress, takes into account the willfulness shown by Defendant's

5   sale of many counterfeit items and the culpability of failing to respond, and is

6   significant enough to serve as compensation to Plaintiff and a deterrent to both

7   Defendant and others"); *Stanley Black & Decker, Inc. v. D&L Elite Investments,*

8   *LLC*, 2014 WL 3738327, at \*17 (N.D. Cal. June 20, 2014), report and

9   recommendation adopted in part, 2014 WL 3728517 (N.D. Cal. July 28, 2014)

10  (awarding treble damages); *see also Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102-

11  1104 (N.D. Cal. 2014) (reducing plaintiff's demand for $2 million in statutory

12  damages down to $45,000 to prevent windfall).

13      In this case, however, the $1,125,600.00 default judgment awarded to Atari is

14  almost *6,000 times* the $189.10 worth of T-shirts that were purportedly infringing

15  Atari's copyright and sold, even assuming all of that was lost profits (which it was

16  not). As a matter of law, an award that is 6,000 times of the actual damages bears

17  absolutely no plausible relationship to the plaintiff's actual damages and constitutes

18  an impermissible windfall. Indeed, Atari's global parent's net income for the 2019-

19  2020 fiscal year was only $2.7 million – an award of almost half of Atari's global

20  parent's annual net income due to the sale of $189 worth of goods is unquestionably

21  a windfall that bears no plausible relationship with the actual damages and cannot

22  possibly be sustained or justified. *See* Beral Supp. Decl., ¶ 3, Exh. "A".

23      Finally, Atari is not entitled to attorneys' fees, as "an election to receive

24  statutory damages under § 1117(c) precludes an award of attorney's fees under

25  § 1117(b)." *See K & N Eng'g, Inc. v. Bulat*, 510 F.3d 1079, 1083 (9th Cir. 2007);

26  *Mikuni Ginko, Ltd. v. Feng Chen Buffet, Inc.*, 2020 WL 2128646, at \*6 (C.D. Cal.

27  May 5, 2020) ("Plaintiffs are seeking statutory damages under § 1117(c), and an

28  election to receive statutory damages, rather than actual damages, precludes an

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

1  award of attorneys' fees"). Nor is this an "exceptional case" where defendant

2  completely disregards the proceedings and fails to appear – as RageOn is attempting

3  to set aside the default and participate in this proceeding. Beyond that, Atari has a

4  litigation funder that funded this litigation. Beral Supp. Decl., ¶ 3, Exh. "A".

5  **III.   CONCLUSION**

6      Atari's strategy has been clear: "accuse the other side of that which you are

7  guilty." Its continuing material misrepresentations to the Court while exploiting

8  RageOn's ignorance and its counsel's derelictions is what inured Atari to the benefit

9  of a seven-figure judgment. The evidence is clear – Atari lied about the response

10 deadline in its Application for Default, lied that RageOn was in default, failed to

11 serve the Application for Default upon RageOn, lied about serving the Application

12 for Default Judgment upon RageOn's registered agent, strategically emailed the

13 Application for Default Judgment to the one person Atari knew would not protect

14 RageOn's interest, actively concealed their unethical and unprofessional conduct,

15 and engaged in scorched-earth litigation tactics to set up smokescreens to distract

16 the Court. Atari's misconduct should be addressed, and RageOn should not have to

17 bear the brunt of a seven-figure judgment (and the significant amount of attorneys'

18 fees it has incurred to seek relief in this process) in light Atari's egregious

19 misconduct. For the above reasons, RageOn respectfully requests that its motion be

20 granted in full.

21 DATED: August 21, 2020          FREEMAN, FREEMAN & SMILEY, LLP

22

23                                By:     _/s/ Arash Beral_

24                                    ARASH BERAL
                                     JEFFREY M. JENSEN
25                                   Attorneys for Defendant
                                     RAGEON, INC.
26

27

28

FREEMAN, FREEMAN & SMILEY, LLP
1888 CENTURY PARK EAST, SUITE 1500
LOS ANGELES, CALIFORNIA 90067
(310) 255-6100

4630297.2