# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATARI INTERACTIVE, INC., <br>     Plaintiff, <br><br>     v. <br><br> RAGEON, INC., <br>     Defendant. | CV 19-10806 DSF (MAAx) <br><br> Order GRANTING Defendant's Application for an Order for Relief from Default Judgment, Setting Aside Entry of Default, and Recalling/Quashing Writ of Execution (Dkt. 26) |

    Defendant RageOn, Inc. applies for an order for relief from default judgment, setting aside entry of default, and recalling/quashing the writ of execution. Dkt. 26 (Mot.). Plaintiff Atari Interactive, Inc. opposes. Dkt. 28 (Opp'n); Dkt. 61 (Suppl. Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the motion is GRANTED.

## I. BACKGROUND

    Plaintiff is a well-known video game brand responsible for games such as Pong, Breakout, and Asteroids. Dkt. 1 (Compl.) ¶ 6. Plaintiff has registered trademarks for its name and logo and the "Pong" name for use on posters, stickers, and clothing. Id. ¶ 13.a. Plaintiff also has registered copyrights for its video games, including the related visual elements. Id. ¶ 13.b. Plaintiff claims common law trademark and trade dress protection in the Atari name and logo, the names and graphics of some of its top games, and the "overall look and feel" of its original game console and joystick. Id. ¶ 14.

Defendant "is an online seller of merchandise, primarily clothing and coffee mugs" that "allows users to create their own designs and sell them on merchandise through [Defendant's] website." Dkt. 26-1 (Krilivsky Decl.) ¶ 2. Plaintiff alleges that after users upload their designs to Defendant's website, Defendant displays the design on a variety of apparel that it sells on its website, and when sold, hand makes and prints the items containing the designs, ships them, and processes the payment. Compl. ¶¶ 15-16; see also Dkts. 28-3 (Suppl. Wesley Decl. Ex. B), 28-4 (Suppl. Wesley Decl. Ex. C), 28-5 (Suppl. Wesley Decl. Ex. D). Defendant disputes this characterization, claiming that after products are purchased, they are "sent through our automated portal to an off-site third party manufacturer who then manufactures the goods." Krilivsky Decl. ¶ 22. Defendant further explains that it "act[s] as [a] passive, automated broker transparently pairing up users with manufacturers." Id.

Plaintiff alleges that Defendant sells, distributes, and profits from "large quantities of counterfeit Atari products" including "products [that] incorporate exact replicas of the registered ATARI trademark (name and logo)," "easily identifiable depictions of the Atari 2600 console and joystick with the distinctive red button," and "copyrights owned by Atari." Compl. ¶¶ 17-18. Defendant contends that "there were only $338.90 in total sales of the alleged/accused products, $149.80 of which" purportedly came from a paralegal at Plaintiff's counsel's law firm. Krilivsky Decl. ¶¶ 26-28.

Defendant was served with the summons and complaint on December 27, 2019 through its registered agent. Dkt. 11 (Proof of Service); see also Krilivsky Decl. ¶ 6 (Defendant "received email notice from our agent for service of process with a link to the documents that were served"). Between December 30 and January 9, Defendant's CEO, Mike Krilivsky, emailed Defendant's attorney, Betty Tufariello, a number of times asking for an update, but Tufariello did not respond. Krilivsky Decl. ¶ 6 & Ex. C. On January 16, 2020, Krilivsky asked Tufariello when she was "planning on replying to Atari" and Tufariello responded that "Atari and I are in discussions[.] I have 21 days. And he is aware [o]f my traveling" and told Defendant that she was going to

file a stipulation to extend Defendant's deadline to respond to Plaintiff's complaint. Id. ¶ 7 & Ex. D. Krilivsky responded that his "attorney friend said we had to file by tomorrow" and Tufariello responded that "I called him[.] We are good[.] . . . Just checked with the office. Indeed our answer is due two weeks from tomorrow." Dkt. 61-1 (Ex. I) at RAGEON_000082.[1] The next day Krilivsky followed up with Tufariello stating that his "attorney friend said a stipulation extending the time to respond to the initial complaint shall be filed with the court before the deadline expires – a phone conversation with their attorney is NOT good enough. Is that being done?" Id. at RAGEON_000084. Tufariello responded that she "had a text screen that shows the extension confirmation. And I am filing when I get back." Id. Tufariello did not file any stipulation and did not respond to the Complaint by the deadline.

On January 23, 2020, Krilivsky followed up asking Tufariello to "send that screenshot" because his "attorney friend is freaking out because he sees that nothing got filed." Id. Krilivsky then spoke with Plaintiff's counsel over the phone and via email; Plaintiff's counsel told Krilivsky that Plaintiff was "about to proceed with default judgement against RageOn because [its] attorney did not file anything" and Krilivsky stated that Defendant was being represented by Tufariello who purportedly received a two-week extension to respond to the Complaint from someone named Daniel Sahad (who may not exist and certainly does not work for Plaintiff's counsel's law firm). Krilivsky Decl. ¶ 8 & Ex. E. After confirming she represented Defendant, Tufariello told Plaintiff's counsel that she intended to file an answer no later than January 30, 2020, in compliance with the alleged two-week

---

[1] Defendant, without explanation, originally redacted this additional portion of the conversation between Krilivsky and Tufariello (and other portions of conversations that relate solely to this matter). In its Reply, Defendant concedes that "redacting the Atari-related portion of [one of the] message[s] was nothing more than a clerical error." Dkt. 66-1 (Reply) at 16-17. Therefore, the Court assumes that any Atari-related conversations are not meant to be redacted.

extension. Dkt. 14-4 (Wesley Decl. Ex. C) at 2. On January 24, 2020, Tufariello told Krilivsky that "I did respond to Keith in the Atari case" and "[o]ur answer is now due on the 30th." Ex. I at RAGEON_000085. On January 28, 2020, Krilivsky asked Tufariello if she was "missing deadlines on these cases" and asked her to "explain to me what you're doing?" Id. Tufariello responded that she was in a meeting and Krilivsky responded that "you keep saying that you'll respond to the issues and then you don't. Can you respond in writing to all the issues?" Id. at RAGEON_000086. Tufariello stated "Yes. That is what we are doing." Id. However, after two follow-up emails from Plaintiff's counsel on January 27 and January 28, Tufariello never filed an answer and Plaintiff's counsel received no further communications from Tufariello. Wesley Decl. Ex. C at 1.[2] Plaintiff applied for entry of default on January 29, 2020. Dkt. 12 (Default Appl.). The clerk properly entered default the next day. Dkt. 13 (Default).[3]

On February 10, 2020, Krilivsky asked Tufariello "What happened with Atari? I received no communication from you – no draft, no update, etc." Krilivsky Decl. ¶ 11 & Ex. H.[4] Tufariello did not

---

[2] Defendant contends that, at this point, Plaintiff's counsel had "an ethical duty" to "communicate the true state of affairs to Mr. Krilivsky and warn Mr. Krilivsky about an impending default." Reply at 5. It is not clear to the Court why this would be so. Plaintiff's counsel communicated directly with Defendant's counsel and explicitly stated it was going to request entry of default. It need not have done more.

[3] Defendant contends that the default was improperly entered because Plaintiff sought default prior to the expiration of Defendant's deadline to answer. Reply at 4-7. This is incorrect. It is undisputed that Defendant's deadline to answer was no later than January 21, and Defendant failed to respond by that date or file a stipulation to extend the time to respond. That, after the deadline had passed, Plaintiff indicated a willingness to hold off on seeking entry of default for a few days so that Defendant could answer does not change those facts.

[4] That same day Tufariello filed a motion to withdraw as counsel for Defendant in another matter citing failure to pay, "irreconcilable differences regarding litigation strategy," and "certain conflicts of interest that have

4

respond.  See Ex. I at RAGEON_000089.  Two days later, Krilivsky followed up stating "I have not received proof of your . . . response on all the other cases . . ." and Tufariello responded "[t]he only two pressing deadlines were [documents related to other cases]."  Dkt. 61-2 (Ex. J) at RAGEON_000096; see also Krilivsky Decl. ¶ 13 & Ex. J.  Krilivsky responded "Not true.  I was told that we defaulted on Atari . . ."  Ex. J at RAGEON_000096.  Tufariello responded that she was "talking about [another] case."  Id.  However, Tufariello then repeats that "[t]he deadlines imposed by Court are being met."  Id. at RAGEON_000097.  Krilivsky again noted that "Atari's came and went, it was Jan 30th and they filed a default because you didn't respond – is that true?"  Id.  Tufariello did not respond to this question and instead continued talking about deadlines on another matter.  Id.

Plaintiff moved for default judgment on February 24, 2020.  Dkt. 14.  The motion was served on Defendant's registered agent for service of process and Tufariello.  Dkt. 14-1 (Wesley Decl.) ¶ 2(e); see also Dkt. 28-2 (Suppl. Wesley Decl. Ex. A).[5]  Krilivsky claims he was not served with these papers, Krilivsky Decl. ¶ 13, and that he "never received Atari's Application for Default Judgment from Ms. Tufariello, nor did Ms. Tufariello ever warn me that a default judgment was being entered," Dkt. 67-1 (Suppl. Krilivsky Decl.) ¶ 5.[6]  On March 13, 2020,

---

recently come up in the present matter, as well as in two other matters, in which I also represent Defendant," including one matter that "named Intellectulaw and me personally as Defendant's co-defendants, as a result of my representation of Defendant in that matter."  Dkt. 28-10 (RJN Ex. D) at 5.  The Court previously GRANTED Plaintiff's request for judicial notice, Dkt. 28-6 (RJN), of court filings made by Defendant and Defendant's counsel.  Fed. R. Evid. 201(b).

[5] Defendant contends that the motion was not served on its registered agent and email service to Tufariello was improper.  Reply at 9 (citing Suppl. Krilivsky Decl. ¶ 5).  The Court need not resolve this dispute.

[6] Plaintiff notes, however, that at his deposition Krilivsky stated he did not remember if Tufariello ever told him about the default judgment.  Ex. K at 197:19-22.

Krilivsky had a discussion with Tufariello about all of Defendant's matters. Krilivsky Decl. ¶ 14. Tufariello did not inform Defendant about the motion for default judgement or that she had never answered the complaint. Id. Krilivsky "grew frustrated with her at some point" and "asked her . . . to turn over all of her files to us, but she refused." Id. Nevertheless, "she continued to provide us legal advice on other matters," id., and never said that she was no longer representing Defendant in this matter, Dkt. 66-2 (Ex. B) at 196:15-17.[7] Krilivsky received no additional updates about the case, which he assumed was due to the COVID-19 pandemic and related court closures. Krilivsky Decl. ¶ 15; see also Ex. B ("if [Tufariello is] not getting back to us, my attorney has always had our back . . . , and then COVID-19 is hitting, and everything is going crazy in the whole world, you know, people are dying, there's a pandemic, this case is either done or there's nothing to worry about. And when there is something to worry about, somebody's going to let me know what to worry about.").[8] The Court granted Plaintiff's application for default judgment and entered judgment on April 15, 2020. Dkts. 16, 18, 19. Plaintiff subsequently identified Defendant's bank account and applied for a writ of execution and order appointing a process server to execute on the writ. See Dkt. 28-1 (Suppl. Wesley Decl.) ¶¶ 3-4; see also Dkts. 22, 23. On June 24, 2020, the writ and order were issued. Dkts. 24, 25. Plaintiff's levy on the identified bank account was successful. Suppl. Wesley Decl. ¶ 4. On June 29, 2020, Krilivsky learned that approximately $882,000 in Defendant's Bank of America account had been seized. Krilivsky Decl. ¶ 17. After failed attempts to resolve the issue with Plaintiff's counsel, Defendant hired counsel and filed this application. Id. ¶¶ 19-20.

---

[7] At his deposition, Krilivsky noted that his produced text messages show that Tufariello provided legal advice on another matter as late as March 19, 2020. See Dkt. 61-3 (Ex. K) at 66:9-67:13; Ex. J at RAGEON_000110.

[8] Krilivsky did not contact Tufariello again until June 21, 2020 and July 1, 2020; he received no response. Krilivsky Decl. ¶ 16 & Ex. K.

## II. LEGAL STANDARD

"The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Federal Rule of Civil Procedure 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . or (6) any other reason that justifies relief.

Good cause is established when the defendant demonstrates that the default was not the result of defendant's culpable conduct, that a meritorious defense exists, and that reopening the default judgment would not result in prejudice to the plaintiff. TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 697 (9th Cir. 2001). "This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." United States v. Signed Pers. Check No. 730 of Yubran S. Mesle, 615 F.3d 1085, 1091 (9th Cir. 2010).

## III. DISCUSSION

### A.  Culpable Conduct

Culpable conduct occurs when a defendant "has received actual or constructive notice of the filing of the action and intentionally failed to answer." Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392 (9th Cir. 1988). "Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process is not 'intentional' . . . and is not necessarily . . . culpable or inexcusable." TCI Group, 244 F.3d at 697-98.

It is undisputed that Defendant received actual notice of the filing of this action. However, based on the additional documents and

testimony provided in the supplemental briefing, the Court concludes that Defendant did not intentionally fail to answer. Although Krilivsky certainly downplayed his understanding of the consequences of default being entered against Defendant,[9] the evidence submitted shows that he intended that Tufariello answer the complaint. Each time Defendant questioned whether Tufariello was meeting deadlines and complying with court rules, she confirmed that she was (or she avoided the question). See Ex. I at RAGEON_000082-85. Moreover, Krilivsky was not on the January 28 email where Plaintiff's counsel warned it would be proceeding with seeking entry of default if Tufariello did not respond by the end of the day, and it does not appear that Tufariello informed Krilivsky of this development. It is not clear what more Krilivsky could have reasonably done prior to the entry of default.[10]

"[W]here the client has demonstrated gross negligence on the part of his counsel, a . . . judgment against the client may be set aside pursuant to Rule 60(b)(6)." Cmty. Dental Servs. v. Tani, 282 F.3d 1164, 1169 (9th Cir. 2002). "[C]onduct on the part of a client's alleged representative that results in the client's receiving practically no representation at all clearly constitutes gross negligence, and vitiat[es] the agency relationship that underlies our general policy of attributing to the client the acts of his attorney." Id. at 1171. In Community Dental, the defendant's attorney "explicitly represented to [the defendant] that the case was proceeding properly" and that the attorney "was performing his responsibilities, thereby deliberately misleading [the defendant] and depriving him of the opportunity to take action to preserve his rights." Id. Here too, Tufariello explicitly

---

[9] The Court cautions Defendant and its counsel to ensure future filings are accurate and not misleading, particularly when declared under penalty of perjury.

[10] Plaintiff's arguments as to what Defendant knew after entry of default is not relevant to the culpable conduct inquiry. Here, the Court considers only whether culpable conduct led to the entry of default. Conduct after entry of default may be relevant to whether the motion was timely, which is addressed below.

represented that the case was proceeding properly and that she was performing her responsibilities. Although Krilivsky questioned whether Tufariello was in fact meeting all deadlines, she reassured him that all deadlines were being met or that there were no outstanding deadlines.

Plaintiff contends that awareness of the action and failure to respond, regardless of the reason, is sufficient under Ninth Circuit law to find culpable conduct. Suppl. Opp'n at 21 (citing <u>Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.</u>, 840 F.2d 685, 690 (9th Cir. 1988) and <u>Franchise Holding II, LLC. v. Huntington Rests. Grp., Inc.</u>, 375 F.3d 922, 926 (9th Cir. 2004)). However, a more recent Ninth Circuit case has noted that "[t]his is not the ordinary standard for Rule 55(c) and 60(b) motions" and "we have never applied it to deny relief in the context of such motions except when the moving party is a legally sophisticated entity or individual." <u>United States v. Signed Pers. Check No. 730 of Yubran S. Mesle</u>, 615 F.3d 1085, 1093 (9th Cir. 2010). The Ninth Circuit did not need to decide whether <u>Franchise Holding II</u> was still good law because the defendant in <u>Mesle</u> was unsophisticated, but it noted that "[i]t is possible to reconcile the language in <u>Franchise Holding II</u> with the standard in <u>TCI Group</u>" because "[w]hen considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality." <u>Id.</u> The Ninth Circuit concluded that at least where the party seeking default was not legally sophisticated, the <u>TCI Group</u> standard requiring that the failure to respond be intentional should apply. <u>Id.</u> Although Krilivsky had some experience supervising attorneys and was generally familiar with default judgments, the Court does not apply a higher standard to Krilivsky or Defendant. Therefore, because the Court finds that Defendant did not intentionally fail to respond to the complaint, default was not the result of culpable conduct.

Plaintiff also contends that "a mere showing of malpractice is insufficient to set aside the default judgment." Suppl. Opp'n at 23 (collecting cases). However, here Tufariello did not merely commit malpractice. She told her client that she was going to timely file a

9

response, failed to do so, failed to inform her client that she missed the deadline, failed to take any actions to rectify the situation, evaded questions about her various failures, assured her client that all deadlines were being met, and failed to inform her client that other additional deadlines were being missed and that it should hire other counsel to further defend the case. Unlike the cases cited by Plaintiff, this was not merely negligence, a mistake, or inexperience. Unbeknownst to her client, Tufariello abdicated her duties as counsel.

## B.   Meritorious Defense

Although specific facts constituting a potential defense must be asserted, the burden on a party seeking to vacate a default judgment is not especially heavy. TCI Group, 244 F.3d at 700. The movant must only "demonstrate facts or law that shows the trial court that 'a sufficient defense is assertible.'" Id. (citation omitted). In other words, "there [must be] some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by default." Hawaii Carpenters' Trust Funds v. Stone, 794 F.2d 508, 513 (9th Cir. 1986). "Where timely relief is sought from a default . . . and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits." See O'Connor v. Nevada, 27 F.3d 357, 364 (9th Cir. 1994) (setting aside a default where no judgment had been entered) (citation omitted).

First, Defendant contends that it cannot be liable for trademark infringement because it "was unaware that products allegedly infringing Atari's rights were offered for sale on its platform," it did not create, manufacture, or supply the offending goods, and it required its users to agree to terms of service which prohibits improper use of the uploaded images. Mot. at 8-9. Plaintiff argues that "print-on-demand websites" can be liable "where they manufacture the products sold on their website" and the two non-binding cases relied upon by Defendant are distinguishable. Opp'n at 15-17. Even assuming Plaintiff's argument is correct, Defendant contends that it does not manufacture the products. Because the Court does not resolve factual issues at this

10

stage, United States v. Aguilar, 782 F.3d 1101, 1107 (9th Cir. 2015) ("All that is necessary to satisfy the meritorious defense requirement is to allege sufficient facts that, if true, would constitute a defense: the question whether the factual allegation [i]s true is not to be determined by the court when it decides the motion to set aside the default" (alteration in original) (internal quotation marks omitted) (quoting Mesle, 615 F.3d at 1094)), Defendant has raised a sufficient defense.

Next, Defendant contends that it has parody and fair use defenses to Plaintiff's trademark and copyright claims and further cannot be liable for copyright infringement because it is protected by the Digital Millennium Copyright Act (DMCA) safe harbor. Mot. at 9-11. Defendant contends that the DMCA applies because it is "largely passive in the posting of alleged infringing content." Id. at 10. Plaintiff does not address the parody and fair use arguments. Opp'n at 17 n. 6. And, again, although Plaintiff disputes whether Defendant qualifies for protection under the DMCA based on its involvement in selling and manufacturing the products, id. at 17, that is a factual issue not properly resolved on a motion to set aside default.

Finally, Defendant contends that Plaintiff cannot obtain an award of $1,125,600 because 1) Defendant might qualify as an "innocent printer" under the Lanham Act which permits only an injunction against future printing; 2) Defendant did not act willfully because it "was not even aware of the allegedly infringing products"; and 3) the damage award is "grossly disproportionate to the alleged harm" because it obtained less than $500 in revenue from the challenged sales. Mot. at 11-12. Plaintiff contends that the award is justified because 1) Defendant is not an innocent printer, 2) Plaintiff has provided evidence of willfulness and Defendant has not provided any evidence of lack of willfulness, and 3) Plaintiff questions the accuracy of Defendant's assertions about the amount of sales. Opp'n at 18-19. But again, these are factual disputes not properly resolved here.

The burden at this stage to show that a sufficient defense is assertible is low. The defenses set forth above depend on resolution of disputed factual issues, including Defendant's involvement in the

11

creation and manufacturing of the infringing products, Defendant's knowledge and awareness of the alleged infringement, and the magnitude of the infringement. Therefore, the Court finds this factor is met.

### C. Prejudice

A default judgment should not be vacated if doing so would result in prejudice to the plaintiff. TCI Group, 244 F.3d at 701. "To be prejudicial, the setting aside of the judgment must result in greater harm than simply delaying resolution of the case." Id. It must hinder the plaintiff's ability to pursue the claim. Id. Being forced to litigate on the merits does not meet this standard. Indeed, an entry of default judgment "gives the plaintiff something of a windfall by sparing [the plaintiff] from litigating the merits of [the] claim." Id.

Plaintiff contends it will be prejudiced because it believes Defendant "intends to dissipate and hide the[] [levied] assets" and "once RageOn has the money back, its motivation to litigate will be gone, rendering it likely to return to its pattern of ignoring legal proceedings." Opp'n at 19. However, Plaintiff has not provided any evidence that Defendant will dissipate and hide its assets, will be unable to satisfy a judgment, or will otherwise improperly prevent Plaintiff from recovering, should it ultimately win on the merits. Moreover, there is no reason to believe that Defendant's current counsel, which has timely complied with all Court deadlines, would ignore this proceeding after the money is returned to Defendant.

### D. Timing

A motion for relief from default judgment "must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c). "[T]he one-year period represents an extreme limit, and the motion will be rejected as untimely if not made within a 'reasonable time,' even though the one-year period has not expired." Kagan v. Caterpillar Tractor Co., 795 F.2d 601, 610 (7th Cir. 1986) (citation and quotations omitted). "There is no hard and fast rule as to

12

how much time is reasonable for the filing of a Rule 60(b)(6) motion; courts have found periods of as little as a few months unreasonable, and have found periods of as long as three years reasonable." Id. (citation omitted). "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." Ashford v. Steuart, 657 F.2d 1053, 1055 (9th Cir. 1981).

After learning no later than February 12, 2020 that default was entered against Defendant, Krilivsky asked Tufariello multiple times to confirm whether she responded to the complaint, but Tufariello never did. See Krilivsky Decl. ¶ 11 & Ex. H; Ex. I at RAGEON_000089, 96. At the same time, Tufariello withdrew as counsel in another case and was a made a co-defendant in a third case. About a month later, Krilivsky and Tufariello had a heated discussion about her representation of Defendant in general, and specifically with regard to the other cases. After March 19, 2020, it does not appear that Krilivsky and Tufariello had any further contact. Defendant waited until its bank account was levied in June 2020, about two-and-a-half months after the default judgment was entered, before hiring counsel to defend it in this action.

Plaintiff contends that Defendant could not have "show[n] [it] reasonably continued to rely on Ms. Tufariello" after February or March 2020. Suppl. Opp'n at 22. However, in early February 2020, Tufariello evaded directly answering any questions about this matter and instead stated on two occasions that all deadlines were being met. And, when Tufariello received the motion for default judgment in late February, see Suppl. Wesley Decl. Ex. A, she did not tell Krilivsky about it. To the contrary, the evidence submitted shows that the first communications after her receipt of the motion for default judgment was weeks later, Ex. I at RAGEON_000089 (no communication between February 10 and March 10); Ex. J at RAGEON_000101 (no communications between February 16 and March 13), and this matter was not discussed. At that time, it appears that Tufariello was transitioning away from representing Defendants, but Krilivsky

13

specifically asked if there was "any info we need to know as a business." See Ex. J at RAGEON_000100. Tufariello does not appear to have raised any potential issues with this matter.

That Defendant believed Tufariello continued to represent it after March 2020 strains credulity. However, given the evidence before the Court, it is not unreasonable for Defendant to have been unaware that Plaintiff moved for default judgment and that Tufariello had taken no actions to set aside the entry of default or oppose the motion for default judgment. Although a more prudent client may have hired new counsel sooner and would not have assumed the case was resolved because it did not hear anything for a few months, the Court does not conclude that Defendant waited an unreasonable amount of time to bring this motion – less than three months after the default judgment was entered and days after being made aware that default judgment had been entered (through Defendant's funds being frozen).

## IV. CONCLUSION

Defendant's motion for relief from default judgment, to set aside entry of default, and recalling/quashing the writ of execution is GRANTED. The Court SETS ASIDE the entry of default, VACATES the default judgment, and QUASHES the writ of execution.

Defendant must file its responsive pleading no later than September 15, 2020.

IT IS SO ORDERED.

Date: August 25, 2020

_____
Dale S. Fischer
United States District Judge

14