BROWNE GEORGE ROSS LLP
Keith J. Wesley (State Bar No. 229276)
  kwesley@bgrfirm.com
Matthew L. Venezia (State Bar No. 313812)
  mvenezia@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Plaintiff
ATARI INTERACTIVE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ATARI INTERACTIVE, INC.,<br><br>        Plaintiff,<br><br>    vs.<br><br>RAGEON, INC.; MICHAEL KRILIVSKY,<br><br>        Defendants. | Case No. 2:19-CV-10806-DSF-MAA<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**(1) TRADEMARK INFRINGEMENT AND COUNTERFEITING [15 U.S.C. §1114];**<br>**(2) COPYRIGHT INFRINGEMENT [17 U.S.C. §§101 et seq.];**<br>**(3) TRADEMARK DILUTION [15 U.S.C. §1125(c)];**<br>**(4) FALSE DESIGNATION OF ORIGIN [15 U.S.C. §1125(a)];**<br>**(5) COMMON LAW UNFAIR COMPETITION;**<br>**(6) CONTRIBUTORY TRADEMARK INFRINGEMENT;**<br>**(7) CONTRIBUTORY COPYRIGHT INFRINGEMENT;**<br>**(8) VICARIOUS TRADEMARK INFRINGEMENT;**<br>**(9) VICARIOUS COPYRIGHT INFRINGEMENT;**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Atari Interactive, Inc., as and for its complaint against defendants RageOn, Inc. and Michael Krilivsky (collectively, "Defendants"), alleges as follows:

## PARTIES

1. Plaintiff Atari Interactive, Inc. (hereinafter "Atari" or "Plaintiff") is a Delaware corporation with its principal place of business in New York, New York.

2. Plaintiff is informed and believes, and thereon alleges, that defendant RageOn, Inc. (hereinafter "RageOn" ) is a Delaware corporation with its principal place of business in Cleveland, Ohio.

3. Plaintiff is informed and believes, and thereon alleges, that defendant Michael Krilivsky ("Krilivsky") is an individual residing in Rancho Mirage, California.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. sections 1331 and 1338 because the action arises under the federal Copyright Act and Lanham Act. *See* 17 U.S.C. §§ 101, *et seq*.; 15 U.S.C. §§ 1051, *et seq*. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. sections 1367 and 1338(b).

5. Venue in this district is proper under 28 U.S.C. section 1391 because RageOn is subject to personal jurisdiction here and Atari has suffered injury here.

6. This Court has personal jurisdiction over RageOn because, upon information and belief, RageOn maintains corporate offices in California, including specifically within this judicial district. This Court also has personal jurisdiction over RageOn because RageOn regularly markets and sells goods, including the goods at issue in this case, to customers in California.

7. This Court has personal jurisdiction over Krilivsky because, upon information and belief, he resides in California. This Court also has personal jurisdiction over Krilivsky because, upon information and belief, he directs the

unlawful conduct of RageOn within California.

## GENERAL ALLEGATIONS

### A.  Atari Is an Iconic Video Game Brand.

8. Atari is one of the most famous video game brands in history. Founded in the early 1970s in California, Atari became *the* pioneer in the video game industry during the 1970s and continuing into the 1980s, developing and releasing (a) home video consoles – e.g., the Atari 2600 – that set new standards in design and function, and (b) a series of hit games – e.g., *Pong*, *Breakout*, *Asteroids*, and many others.

9. Atari became known to relevant consumers and the public at large by its inherently distinctive trade name, as well as its inherently distinctive A-shaped or "Fuji" logo design. The Atari name and logo are depicted immediately below.



10. Atari has continued to market, promote, license, and sell products, including a catalog of more than 200 well-known games, worldwide under the Atari name and logo for over four decades.

11. Video gamers new and old recognize and revere Atari's place as a very well-known and iconic pioneer of the video game industry.

12. Atari has expanded into a multi-platform, global interactive entertainment company, adapting many of its classic games for online platforms such as Facebook, smartphones, and tablets.

13. Atari has developed, promoted, and distributed new interactive entertainment and products, including a new VCS console (modeled off the design of the original 2600 unit) that is currently being promoted and pre-sold on Indiegogo and that has already raised more than $3 million.

14. Atari has an active licensing business through which Atari has extended its brand into other media, merchandising, and publishing categories.

15. The Atari name, logo, and classic video games are valuable intellectual property owned by Atari. Atari therefore obtained registrations with the United States Patent and Trademark Office for many of its trademarks and registrations with the United States Copyright Office for many of its copyrights. For example:

    a. Through commercial use and contractual agreements with its predecessors-in-interest, Atari is the owner of USPTO Trademark Registration No. 4,214,210 for the ATARI name and logo used in connection with, among other things, "printed matter, namely posters, stickers" and "articles of clothing"; and Atari is the owner of USPTO Trademark Registration No. 4,324,638 for the PONG name used in connection with, among other things "printed matter, namely posters, stickers" and "articles of clothing." Appended hereto as Exhibits 1 and 2 are true and correct copies of the aforementioned trademark registrations.

    b. Through contractual agreements with its predecessors-in-interest, Atari is the owner of multiple copyright registrations for, among others, the following video games, including the visual elements thereof: *Combat*, *Centipede*, *Warlords*, *Pong*, and *Asteroids*.

16. Moreover, through extensive and continuous promotion and sales, unsolicited press, and word of mouth, Atari owns common law rights in various trademarks and trade dress, including the *Atari* name and logo, the *Combat*,

*Centipede*, *Warlords*, *Pong*, and *Asteroids* names and graphics, and the overall look and feel of the Atari 2600 game console and joystick.

### B. RageOn Knowingly Infringes Upon Atari's Intellectual Property Rights by Creating, Manufacturing, and Distributing Large Quantities of Counterfeit Atari Clothing and Printed Material.

17. Formed in or around 2015, RageOn's stated goal is to provide a service through which "artists from around the globe can create and sell any design that comes to mind with no investment other than time." What RageOn does not mention is that this model results in it actively facilitating the sale of substantial quantities of counterfeit goods.

18. Through RageOn's website, www.rageon.com, visitors can upload designs that RageOn then displays on a variety of apparel – from t-shirts, pants, and sweatshirts to shower curtains – pictured on the site. RageOn offers for sale the products on display. If a visitor to the site orders a product, RageOn "hand make[s]" and "print[s] that item/s just for [the visitor]." Upon information and belief RageOn then ships and processes the payment for the product. RageOn represents its standard production time is up to 10 business days plus shipping time." RageOn then splits the proceeds of the sale – retaining approximately a 25% commission – with the person who originally uploaded the design.

19. RageOn is advertising, marketing, creating, displaying, offering for sale, selling, distributing, and profiting from large quantities of counterfeit Atari products. Many of the counterfeit products incorporate exact replicas of the registered ATARI trademark (name and logo) on products in the classes for which the marks are registered. Other counterfeit products incorporate easily identifiable depictions of the Atari 2600 console and joystick with the distinctive red button. A few examples are depicted below. Others are shown in Exhibit 3.







20. In addition, RageOn is advertising, marketing, creating, displaying, offering for sale, selling, distributing, and profiting from products incorporating copyrights owned by Atari. A few examples are depicted below. Others are shown in Exhibit 3.

| CENTIPEDE | COMBAT | ASTEROIDS |
|---|---|---|





21. RageOn's aforementioned infringement is knowing and willful, as evidenced by (a) the sheer quantity of different counterfeit designs being sold by RageOn, (b) the exact duplication of a variety of iconic Atari designs, and (c) RageOn's pattern and practice of infringing upon the intellectual property rights of well-known brands.

22. Moreover, in many cases, the products for sale on RageOn's site use Atari's famous marks in manners that are vulgar or salacious and likely to tarnish their goodwill among consumers. Examples from this category are pictured below.



C. **RageOn's Infringement Extends Beyond Use of Atari's Intellectual Property on the Actual Products Sold on the Site.**

23. As described above, RageOn infringed upon Atari's intellectual property rights by promoting and selling products incorporating exact copies of Atari's trademarks and copyrights. RageOn's infringement, however, goes beyond the products themselves.

24. RageOn used the word mark "Atari" in various ways to advertise and promote the RageOn website and services, including by displaying the word "Atari" repeatedly not just on products, but on the site itself. In addition, upon information and belief, RageOn used the word mark "Atari" as a keyword that drove users to the RageOn site. Making use of the "Atari" mark in this way did more than just

advertise and promote specific products; rather, RageOn's uses of the Atari mark above and beyond on the products themselves advertised and promoted RageOn and its services, as well as created a false perception of an association or endorsement by Atari of RageOn.

25. RageOn has profited from its unauthorized use of Atari's intellectual property through the sale of the infringing goods and advertising and promotional uses of the Atari mark, and RageOn's infringement has harmed Atari by cheapening and diluting the Atari brand, diverting profits from the sale of authentic Atari goods, and causing Atari to lose profits and licensing fees from the authorized use of its intellectual property.

**D.   Krilivsky Authorized and Was the Moving Force Behind RageOn's Unlawful Conduct**

26. Upon information and belief, Krilivsky is the founder of RageOn, owns a significant interest in RageOn, and exercises primary control over RageOn as its CEO.

27. Upon information and belief, despite actual knowledge that intellectual property infringements are rampant on RageOn, Krilivsky has intentionally failed to hire adequate personnel to police such infringement, or to take any other reasonable steps to mitigate such infringements.

28. Upon information and belief, Krilivsky structured RageOn to allow a platform for counterfeiters to sell their illegal goods, and Krilivsky benefits financially from each sale of a counterfeit on RageOn.

**FIRST CLAIM FOR RELIEF**

**(Trademark Infringement and Counterfeiting Against All Defendants)**

29. Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

30. Atari is the owner of the registered ATARI and PONG trademarks for the categories of goods on which RageOn is using the trademarks, as well as

registered trademarks for the COMBAT, CENTIPEDE, WARLORDS, and ASTEROIDS names (collectively, the "Atari Trademarks").

31. The Atari Trademarks are valid, protectable marks.

32. RageOn is advertising, marketing, creating, displaying, offering for sale, selling, distributing, and profiting from products incorporating the Atari Trademarks or nearly identical variations thereof. In addition, beyond using the Atari Trademarks on products themselves, RageOn has used the trademarks on the RageOn site for promotional purposes and to drive consumers to the site.

33. RageOn's use of the Atari Trademarks is likely to cause confusion among ordinary purchasers as to the source of the goods.

34. Atari has never consented to RageOn's use of its trademarks.

35. RageOn infringed upon the Atari Trademarks and engaged in trademark counterfeiting willfully.

36. As a proximate result of the unfair advantage accruing to RageOn from using confusingly similar marks and deceptively trading on Atari's goodwill, RageOn has made substantial sales and profits in amounts to be established according to proof.

37. As a proximate result of the unfair advantage accruing to RageOn from using similar or quasi-similar marks and deceptively trading on Atari's goodwill, Atari has been damaged and deprived of substantial sales and has been deprived of the value of its trademarks as commercial assets, in amounts to be established according to proof.

38. Unless restrained by the Court, RageOn will continue to infringe Atari's trademarks. Pecuniary compensation will not afford Atari adequate relief for the damage to its trademarks and brand. In the absence of injunctive relief, consumers are likely to continue to be mistaken or deceived as to the true source, origin, sponsorship, and affiliation of RageOn and their purported goods.

39. RageOn's acts were committed, and continue to be committed, with

1 actual notice of Atari's exclusive rights and with the intent to cause confusion, to
2 cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill
3 associated with Plaintiff and its products.  Pursuant to 15 U.S.C. section 1117, Atari
4 is, therefore, entitled to recover three times its actual damages or three times
5 RageOn's profits, whichever is greater, together with its attorneys' fees.  Atari is
6 also entitled to statutory damages of $2 million per registered mark.  In addition,
7 pursuant to 15 U.S.C. section 1118, Atari is entitled to an order requiring destruction
8 of all infringing products and promotional materials in RageOn's possession.

**SECOND CLAIM FOR RELIEF**

**(Copyright Infringement Against All Defendants)**

11      40.     Atari re-alleges and incorporates herein by reference each and every
12 allegation set forth above.

13      41.     Atari has complied in all respects with the copyright laws of the United
14 States, 17 U.S.C. §101 et seq., and has secured the exclusive rights and privileges in
15 and to the original expression in the following copyrights that have been duly
16 registered with the U.S. Copyright Office: *Combat*, *Centipede*, *Warlords*, *Pong*, and
17 *Asteroids*.

18      42.     RageOn had access to Atari's copyrighted works as established by,
19 among other things, (a) the widespread availability of pictures of Atari-made or
20 Atari-licensed products incorporating those copyrights, (b) the fact that Atari's
21 copyrighted games are well known in the industry and in the public, (c) the striking
22 similarity between the expression used on the infringing goods and the expression in
23 Atari's copyrights, and (d) the fact that RageOn affirmatively advertises the
24 infringing goods through the use of the Atari trade name.

25      43.     RageOn infringed Atari's copyrights by advertising, marketing,
26 creating, displaying, offering for sale, selling, distributing, and profiting from
27 products incorporating protectable expression taken from Atari's copyrights,
28 without Atari's permission.

44. RageOn infringed Atari's copyrights willfully.

45. Atari is entitled to actual damages and RageOn's profits, in an amount to be proven at trial.

46. Alternatively, Atari is entitled to statutory damages in an amount no less than $150,000.00 per copyright.

47. RageOn's acts have caused and will continue to cause irreparable harm to Atari unless restrained by this Court. Atari has no adequate remedy at law. Accordingly, Atari is entitled to an order enjoining and restraining RageOn and all those acting in concert with RageOn, during the pendency of this action and permanently thereafter, from manufacturing, distributing, importing, exporting, marketing, offering for sale, or selling copies or substantially similar copies of Atari's copyrights.

## THIRD CLAIM FOR RELIEF

### (Trademark Dilution Against All Defendants)

48. Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

49. The ATARI and PONG trademarks are widely recognized by the general consuming public of the United States.

50. RageOn's unauthorized use of the ATARI and PONG trademarks has the effect of tarnishing and blurring Atari's authentic trademark.

51. Atari is entitled to recover damages and/or RageOn's profits in an amount to be determined at trial.

52. Atari is entitled to an order preliminarily and permanently enjoining RageOn from using its trademarks in the future.

53. Because RageOn has willfully intended to cause dilution of Atari's trademarks, Atari is further entitled to recover its costs of suit and reasonable attorney's fees, pursuant to 15 U.S.C. sections 1117 and 1125(c)(2).

## FOURTH CLAIM FOR RELIEF

### (False Designation of Origin Against All Defendants)

54. Atari re-alleges and incorporate herein by reference each and every allegation set forth above.

55. The Atari Trademarks, as well as the overall look and feel of Atari's 2600 console and joystick (the "2600 trade dress"), are inherently distinctive and have also acquired secondary meaning through extensive promotion and sales, over unsolicited press, and word of mouth for over four decades.

56. RageOn is advertising, marketing, creating, displaying, offering for sale, selling, distributing, and profiting from products incorporating the Atari Trademarks and the 2600 trade dress or nearly identical variations thereof.

57. RageOn's use of the Atari Trademarks and the 2600 trade dress is likely to cause confusion among ordinary purchasers as to the source of the goods.

58. Atari has never consented to RageOn's use of its trademarks or trade dress.

59. RageOn infringed upon Atari's trademarks and trade dress willfully.

60. As a proximate result of the unfair advantage accruing to RageOn from using similar or quasi-similar marks and trade dress and deceptively trading on Atari's goodwill, RageOn has made substantial sales and profits in amounts to be established according to proof.

61. As a proximate result of the unfair advantage accruing to RageOn from using confusingly similar marks and trade dress and deceptively trading on Atari's goodwill, Atari has been damaged and deprived of substantial sales and has been deprived of the value of its trademarks as commercial assets, in amounts to be established according to proof.

62. Unless restrained by the Court, RageOn will continue to infringe Atari's trademarks and trade dress. Pecuniary compensation will not afford Atari adequate relief for the damage to its trademarks, trade dress, and brand. In the

absence of injunctive relief, consumers are likely to continue to be mistaken or deceived as to the true source, origin, sponsorship, and affiliation of RageOn and their purported goods.

63. RageOn's acts were committed, and continue to be committed, with actual notice of Atari's exclusive rights and with the intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with Plaintiff and its products. Pursuant to 15 U.S.C. section 1117, Atari is, therefore, entitled to recover three times its actual damages or three times RageOn's profits, whichever is greater, together with its attorneys' fees. Atari is also entitled to statutory damages of $2 million per registered mark. In addition, pursuant to 15 U.S.C. section 1118, Atari is entitled to an order requiring destruction of all infringing products and promotional materials in RageOn's possession.

## FIFTH CLAIM FOR RELIEF

**(Common Law Unfair Competition Against All Defendants)**

64. Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

65. RageOn's unauthorized use of Atari's trademarks and trade dress is likely to cause consumer confusion as to the source, origin, sponsorship, and association of RageOn's products.

66. Atari has been, and will continue to be, damaged and irreparably harmed by the actions of RageOn unless RageOn is enjoined by this Court.

67. Atari has no adequate remedy at law.

68. Atari is entitled to recover damages and/or RageOn's profits in an amount to be determined at trial.

69. Atari is informed and believes, and thereon alleges, that RageOn committed the foregoing acts with the intention of depriving Atari of its legal rights, with oppression, fraud, and/or malice, and in conscious disregard of Atari's rights. Atari is, therefore, entitled to an award of exemplary and punitive damages,

1 according to proof.

## SIXTH CLAIM FOR RELIEF

(Contributory Trademark Infringement and Counterfeiting Against All Defendants)

70. Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

71. RageOn has been and continues to be aware of – and has been and continues to contribute to – the infringement of Atari's trademarks and the use of counterfeit Atari products on its site. The infringing and counterfeit products are prominently displayed and promoted on RageOn's website. RageOn's website is configured so that a search for "Atari" or other Atari trade names will lead directly to the infringing and counterfeit goods. RageOn creates and distributes the infringing and counterfeit goods to the end consumer and facilitates the financial transactions.

72. Alternatively, RageOn has remained willfully blind to the infringement and/or counterfeiting of Atari trademarks on its website and on the products it creates and distributes to the end consumer.

73. Atari has been damaged by and RageOn has profited from RageOn's contributory trademark infringement and counterfeiting.

74. To remedy RageOn's contributory trademark infringement, Atari is entitled to all of the remedies set forth above for direct trademark infringement, counterfeiting, false designation of origin, and unfair competition.

## SEVENTH CLAIM FOR RELIEF

(Contributory Copyright Infringement Against All Defendants)

75. Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

76. RageOn has been and continues to be aware of – and has been and continues to contribute to – the infringement of Atari's copyrights on its site. The infringing products are prominently displayed and promoted on RageOn's website.

RageOn's website is configured so that a search for "Atari" or other Atari trade names will lead directly to the infringing goods. RageOn creates and distributes the infringing goods to the end consumer and facilitates the financial transactions.

77. Alternatively, RageOn has remained willfully blind to the infringement of Atari copyrights on its website and on the products it creates and distributes to the end consumer.

78. Atari has been damaged by and RageOn has profited from RageOn's contributory copyright infringement.

79. To remedy RageOn's contributory copyright infringement, Atari is entitled to all of the remedies set forth above for direct copyright infringement.

## EIGHTH CLAIM FOR RELIEF

(Vicarious Trademark Infringement and Counterfeiting Against All Defendants)

80. Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

81. RageOn and the third parties who design and upload the infringing designs are in an apparent or actual partnership, have the authority to bind one another in transactions with third parties, and/or exercise joint ownership or control over the infringing products. RageOn is thus vicariously liable for the trademark infringement and counterfeiting of the third parties who design and upload the infringing designs onto the RageOn site.

82. Atari has been damaged by and RageOn has profited from RageOn's vicarious trademark infringement and counterfeiting.

83. To remedy RageOn's vicarious trademark infringement and counterfeiting, Atari is entitled to all of the remedies set forth above for direct trademark infringement, counterfeiting, false designation of origin, and unfair competition.

## NINTH CLAIM FOR RELIEF

(Vicarious Copyright Infringement Against All Defendants)

84. Atari re-alleges and incorporates herein by reference each and every allegation set forth above.

85. RageOn enjoys a direct financial benefit from the copyright infringement on its website. RageOn gets paid a percentage of every sale of every product displayed on the site. The availability of the infringing goods also draws customers to the site, which causes RageOn to make money both through the sale of the infringing goods and through the sale of all goods displayed on its site.

86. RageOn has the legal right to stop or limit the copyright infringement on its website and the practical ability to do so. RageOn has the ability and means to monitor its site for infringing designs and the right to remove them.

87. Atari has been damaged by and RageOn has profited from RageOn's vicarious copyright infringement. To remedy RageOn's vicarious copyright infringement, Atari is entitled to all of the remedies set forth above for direct copyright infringement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

1. For preliminary and permanent injunctions enjoining and restraining Defendants, their agents, employees, representatives, partners, joint venturers, and/or anyone acting on behalf of, or in concert with Defendants, from:

    a. designing, manufacturing, importing, shipping, delivering, selling, marketing, displaying, advertising, or promoting any product that incorporates designs substantially similar to Atari's copyrights;

    b. designing, manufacturing, importing, shipping, delivering, selling, marketing, displaying, advertising, or promoting any product that incorporates or is marketed in conjunction any Atari trademark or trade dress;

    c. representing or implying, directly or indirectly, to retailers,

customers, distributors, licensees, or any other customers or potential customers of Defendants' products that Defendants' products originate with, are sponsored, endorsed, or licensed by, or are otherwise associated or affiliated with Plaintiff;

2. For an order requiring the destruction of all of Defendants' infringing products and all marketing, advertising, or promotional materials depicting Defendants' infringing products;

3. For an accounting of all profits obtained by Defendants from sales of the infringing products and an order that Defendants hold all such profits in a constructive trust for the benefit of Plaintiff;

4. For an award to Plaintiff of all profits earned by Defendants from their infringing acts;

5. For compensatory damages according to proof;

6. For statutory damages of no less than $150,000.00 per registered copyright and no less than $2 million per registered trademark;

7. For pre-judgment interest on all damages awarded by this Court;

8. For reasonable attorney's fees and costs of suit incurred herein; and

9. For such other and further relief as the Court deems just and proper.

Dated: September 11, 2020

BROWNE GEORGE ROSS LLP
Keith J. Wesley

By:   */s/ Keith J. Wesley*
        Keith J. Wesley
        Matthew L. Venezia
Attorneys for Plaintiff
ATARI INTERACTIVE, INC.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: September 11, 2020

BROWNE GEORGE ROSS LLP
Keith J. Wesley

By: */s/ Keith J. Wesley*
Keith J. Wesley
Matthew L. Venezia
Attorneys for Plaintiff
ATARI INTERACTIVE, INC.

# PROOF OF SERVICE

**Atari Interactive, Inc. v. Rageon, Inc.**
**Case No.: 2:19-CV-10806-DSF-MAA**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2121 Avenue of the Stars, Suite 2800, Los Angeles, CA 90067.

On September 11, 2020, I served true copies of the following document(s) described as **FIRST AMENDED COMPLAINT** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 11, 2020, at Los Angeles, California.

Andrea A. Augustine

1658227.1

FIRST AMENDED COMPLAINT

**SERVICE LIST**
**Atari Interactive, Inc. v. Rageon, Inc.**
**Case No.: 2:19-CV-10806-DSF-MAA**

ARASH BERAL
arash.beral@ffslaw.com
JEFFREY M. JENSEN
jeffrey.jensen@ffslaw.com
FREEMAN, FREEMAN & SMILEY, LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: (310) 255-6100
Facsimile: (310) 255-6200

1658227.1

FIRST AMENDED COMPLAINT